228 P.3d 216
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Thomas W. McBRIDE, Defendant-Appellant.
No. 06CA2524.
Colorado Court of Appeals, Div. VII.
October 1, 2009.

228 P.3d 217

        COPYRIGHT MATERIAL OMITTED

228 P.3d 218

        COPYRIGHT MATERIAL OMITTED

228 P.3d 219

        COPYRIGHT MATERIAL OMITTED

228 P.3d 220

         John W. Suthers, Attorney General, Christopher Y. Bosch, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.
        Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.
        Opinion by Judge CONNELLY.
        Defendant, Thomas W. McBride, was convicted after a jury trial of attempted first degree murder and first degree assault. The trial court imposed concurrent prison terms of forty-eight years for the attempted murder and thirty-two years for the assault. We hold the prosecution's closing arguments were so flagrantly improper as to constitute plain error that should have prompted corrective action by the trial court even absent timely objection. Because the evidence on the assault count was overwhelming, and because one of the improper arguments could only have affected the attempted murder count, we reverse only the attempted murder conviction.
        I. Background
        Defendant and the victim were in a relationship for more than two years. The victim testified that during this relationship defendant committed several violent acts, including punching, beating, and choking her. She also recounted incidents when defendant had threatened her with a knife and shotgun.
        The shooting giving rise to these convictions occurred on Christmas Eve 2005. The victim denied the couple had argued that day, though she said defendant had been angry the previous night because she had fallen asleep and not called him.
        The couple returned to defendant's duplex residence after trying to do some last-minute shopping and then stopping at a liquor store. The victim went into the bedroom and put on what she described as a "sexy" pair of shorts to prepare for an intimate evening. She believed defendant was making drinks in the kitchen.

228 P.3d 221

         Defendant entered the bedroom minutes later with a shotgun rather than drinks. He pointed the gun at the victim without speaking and shot her in the face. The bloodied victim fell to the floor. At the victim's urgings, defendant ultimately called 911. The victim somehow survived but suffered horrific injuries.
        II. The Prosecution's Closing Arguments
        "Prosecutors have a higher ethical responsibility than other lawyers": they must effectuate "the sovereign's goal that justice be done in every case and not necessarily that the prosecution `win.'" Domingo-Gomez v. People, 125 P.3d 1043, 1049 (Colo. 2005). But they are also "advocates" with "wide latitude" to make arguments based on "facts in evidence and any reasonable inferences drawn therefrom." Id. at 1048. The most oft-quoted case drew a line (easy to state but not always easy to apply) between striking "hard blows" and "foul ones." Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).
        Given the sometimes fuzzy line between hard-but-fair blows and foul blows, and because arguments delivered in the heat of trial are not always perfectly scripted, see Donnelly v. DeChristoforo, 416 U.S. 637, 646-47, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), reviewing courts accord prosecutors the benefit of doubt where remarks are "ambiguous," id., or simply "inartful." Domingo-Gomez, 125 P.3d at 1051. But this does not alter the fundamental duty of prosecutors "scrupulously to avoid comments that could mislead or prejudice the jury." Id. at 1049.
        Where, as here, a defendant did not preserve a claim of error by objecting at trial, appellate review is circumscribed by the plain error standard of Crim. P. 52(b). Defendant must show the arguments were "flagrantly, glaringly, or tremendously improper." Domingo-Gomez, 125 P.3d at 1053 (internal quotations omitted). Also, because courts do not reverse convictions to punish prosecutors, see Crider v. People, 186 P.3d 39, 44 (Colo.2008), defendant must show the arguments so undermined the trial's fundamental fairness as to cast doubt on the judgment's reliability. See Liggett v. People, 135 P.3d 725, 735 (Colo.2006). Not surprisingly, "prosecutorial misconduct in closing argument rarely constitutes plain error." Id. This is that rare case.
        A. The flagrant improprieties
        1. Accusing defendant of having "lied over and over"
        If one thing is settled in Coloradoâ not just today but when this case was tried in 2006âit is that prosecutors may not accuse defendants of having "lied." Id. at 1050-51; see Crider, 186 P.3d at 41 (the 2005 decision in Domingo-Gomez made this prohibition "abundantly clear"). Indeed, while some earlier cases "appeared to sanction the characterization of witness testimony as a lie, as long as the attorney's argument was related to specific evidence that tended to demonstrate that to be the case," Crider, 186 P.3d at 42 (citing cases that were disapproved in Colorado as of 2005), it was held almost three decades ago that it was plain error for a prosecutor to argue that a defendant's out-of-court statements were lies. People v. Trujillo, 624 P.2d 924, 925-26 (Colo.App.1980).
        Here, in direct violation of these settled admonitions, the prosecutor accused defendant of having "offered a whole rainbow of explanations" and thereby having "lied over and over," which "shows his guilt." The six cited examples were three pretrial statements by defendant (differing mainly in nuance), defense counsel's opening statement, defense counsel's cross-examination of a detective, and testimony by a defense expert. The prosecutor argued the reason defendant was "offering you story after story after story" was that he had "been running from this horrible truth" since the shooting. The prosecutor also referred repeatedly to what was and was not "true": he stated the defense theory "ain't true" and was "not the truth," while "the truth" was attempted first degree murder and first degree assault.
        The prosecutor's repeated accusations that the defense had "lied" were plainly improper under settled Colorado law. Indeed, the arguments here were more flagrantly wrong than those condemned in prior Colorado 

228 P.3d 222
 cases because the prosecutor based the "liar" accusations not just on defendant's own statements but also on legitimate opening statements and cross-examinations by the defense attorney.
        2. Inflammatory appeals to jury emotions
        Defendant challenges several prosecution arguments as having been improperly inflammatory appeals to jury emotions. Before detailing the particular arguments, we must consider what makes an argument not just improper but so obviously improper as to be plain error even absent trial court objection.
        Arguments are obviously wrong if controlling law directly precludes them. The "liar" arguments fall into that category.
        But novelty does not provide a safe harbor for flagrantly improper arguments. Colorado appellate courts have held various arguments plainly improper even though no prior Colorado case had considered those specific arguments. E.g., Harris v. People, 888 P.2d 259, 267-69 & n. 5 (Colo.1995) (holding plainly improper arguments that after analogizing defendant to Saddam Hussein, made allusions to the need to punish and for jurors to have courage to punish brutes, thugs, and bullies); People v. Walters, 148 P.3d 331, 336-37 (Colo.App.2006) (argument that defendant had been "lurking around elementary schools" was plainly and "egregiously improper" where it was not supported by that particular record); see also Domingo-Gomez, 125 P.3d at 1052-53 (in conducting plain error review, court applied general principles to hold improper (albeit not sufficiently prejudicial to require reversal) specific prosecution argumentsâthat defense witnesses made up stories and that case had passed a screening processâwithout citing any prior case law precluding those specific arguments).
        Thus, "the `plainness' of the error can depend on well-settled legal principles as much as well-settled legal precedents." United States v. Brown, 352 F.3d 654, 664 (2d Cir.2003) (emphasis in original). The "obviousness" requirement can be no more demanding than the requirement that the law have been "clearly established" before government officials face damages liability for constitutional violations. See id. at 665 n. 10. For that law "to be established clearly,. . . there is no need that the very action in question have previously been held unlawful." Safford Unified School Dist. No. 1 v. Redding, 557 U.S. ___, ___, 129 S.Ct. 2633, 2643, 174 L.Ed.2d 354 (2009) (internal quotations and punctuation omitted). Rather, government officials can "be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).
        We must apply a general principle to specific arguments first challenged on appeal. The general principle is that prosecutors may not resort to "inflammatory comments" that serve no purpose but "inflaming the passions of the jury." Domingo-Gomez, 125 P.3d at 1049. It is often "hard to draw" the line between proper and improper arguments. Id. at 1051. Not here.
        a. Calling defendant a "coward"
        The prosecutor argued defendant was "not only guilty" but was also "a coward." Referring to evidence that had been admitted for the limited purpose of helping the jury evaluate defendant's intent in the shooting, the prosecutor opined: "Where I come from, any time you beat a woman, it's a cowardly act." The prosecutor later described the shooting as "the ultimate act of cowardice."
        We do not hold that calling a defendant a "coward" is always error, much less obvious error. Prosecutors should avoid "pejoratives" that amount to no more than "name calling," see United States v. Rodriguez-Estrada, 877 F.2d 153, 159-60 & n. 6 (1st Cir.1989); United States v. White, 486 F.2d 204, 207 (2d Cir.1973), and some cases criticize calling defendants "cowards." Bland v. Sirmons, 459 F.3d 999, 1025 (10th Cir.2006); United States v. Giry, 818 F.2d 120, 132-33 (1st Cir.1987); United States v. Murray, 445 F.2d 1171, 1175-76 (3d Cir. 1971). An older Colorado case held, however, that calling a defendant a "despicable 

228 P.3d 223
 coward" was not error where "the evidence afforded ample justification for the language." Massie v. People, 82 Colo. 205, 218, 258 P. 226, 231 (1927); but cf. People v. Mason, 643 P.2d 745, 752 (Colo.1982) ("references to the defendant as a `con man' were improper albeit not plain error requiring reversal and indicate either a misplaced zeal to win the case or an ignorance of the elemental principles of trial protocol"), cited in Liggett, 135 P.3d at 735.
        What makes the "coward" arguments plainly wrong here is that they grossly misused evidence admitted for a limited purpose. The evidence that defendant previously had beaten the victim could not be used to prove his bad "character." CRE 404(b). In arguing that these prior beatings made defendant "a coward," because "where I come from any time you beat a woman, it's a cowardly act," the prosecutor made a blatantly improper character attack.
        b. Personal attacks on the defense expert
        The prosecution made repeated personal attacks on a defense expert who relied on crime scene evidence to opine that the shooting had occurred differently than the victim had testified. The prosecutor said the "hired gun expert" had "to come up with something" and experts "aren't going to just admit to you that they made this up," but "that's exactly what happened. Either he made it up or he didn't look at the evidence." He said the expert was "full of it, full of it," and his testimony was "garbage."
        While prosecutors may challenge defense experts' biases, methods, and conclusions, they may not resort to unfairly "prejudicial comments denigrating the expert." People v. Sommers, 200 P.3d 1089, 1097 (Colo.App.2008). Sommers distinguished out-of-state cases holding that "the prosecution denigrated the defense by `insinuating' that the expert concocted or colored his testimony in exchange for his fee and the prospect of future work." Id. The division wrote that "unlike in those cases," the prosecutor "pointed out" the expert's potential bias but "made no prejudicial comments denigrating the expert." Id. There was "no prosecutorial misconduct upon which a claim of plain error can be based." Id.
        The prosecution's repeated personal attacks on the defense expert went so far beyond accepted limits as to constitute obvious error. Those attacks denigrated the expert as a "hired gun" who was "full of it" and who in return for $275 an hour fees (which overstated the actual $175-225 per hour fees) "made up" testimony that was "garbage." Cf. People v. Marion, 941 P.2d 287, 294 (Colo.App.1996) (prosecutor's arguments that defense testimony was "all a crock" and "a story, make-believe" should have been "avoided" but did not require reversal under plain error standard).
        c. Exhortations to "do justice" for "strangers"
        The prosecutor also exhorted jurors to "do justice for other strangers" (presumably the victim and her family). Prosecutors may not pressure jurors by suggesting that guilty verdicts are necessary to do justice for a sympathetic victim. Cf. United States v. Young, 470 U.S. 1, 18, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) ("error" for prosecutor to "exhort the jury to `do its job'; that kind of pressure . . . has no place in the administration of criminal justice"). The Attorney General has conceded these arguments might have been "ill advised." We need not decide whether they were obvious error because that decision would not affect the outcome of this case.
        3. Misstating the presumption of innocence
        The prosecutor said that as defendant "sits here today, he sits here in front of you a guilty man. That presumption of innocence that we had when we started this case is gone." He told jurors not to begin their deliberations at "not guilty" because, "You're about 10 miles from not guilty before you even start deliberating."
        These arguments were flawed because a defendant "retains a presumption of innocence throughout the trial process." Martinez v. Court of Appeal, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) 

228 P.3d 224
 (emphasis added). This presumption remains until after a jury returns a guilty verdict. See District Attorney's Office v. Osborne, 557 U.S. ___, ___, 129 S.Ct. 2308, 2320, 174 L.Ed.2d 38 (2009) ("at trial, the defendant is presumed innocent" but this presumption disappears upon conviction); Portuondo v. Agard, 529 U.S. 61, 76, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) (Stevens, J., with Breyer, J., concurring) ("the presumption of innocence . . . survives until a guilty verdict is returned"). The "presumption operates at the guilt phase of a trial to remind the jury that the State has the burden of establishing every element of the offense beyond a reasonable doubt." Delo v. Lashley, 507 U.S. 272, 278, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993).
        Our state's model jury instructions accord with these principles on both the timing and effect of the presumption. See CJI-Crim. 3:04 (1983), quoted in People v. Rubio, 222 P.3d 355, 363 (Colo.App. 2009); see also People v. Hill, 182 Colo. 253, 258, 512 P.2d 257, 259 (1973) (quoting earlier version). The instructions tell jurors that the "presumption of innocence": (1) "remains with the defendant throughout the trial"; and (2) "should be given effect by you unless, after considering all the evidence, you are then convinced that the defendant is guilty beyond a reasonable doubt." CJI-Crim. 3:04.
        The prosecutor's arguments, which contradicted these principles, are similar to those held constitutionally impermissible in Mahorney v. Wallman, 917 F.2d 469 (10th Cir. 1990). There, an Oklahoma prosecutor argued that the "presumption of innocence no longer exists" and "has been removed by the evidence and defendant is standing before you now guilty." Id. at 470. The Tenth Circuit held these arguments "undermined two fundamental aspects of the presumption of innocence, namely that the presumption (1) remains with the accused throughout every stage of the trial, including, most importantly, the jury's deliberations, and (2) is extinguished only upon the jury's determination that guilt has been established beyond a reasonable doubt." Id. at 471 n. 2 (emphasis in original).
        We accordingly hold that this prosecution argument, like so many others in this case, was erroneous. The argument should not be repeated in future cases. Cf. People v. Villa, ___ P.3d ___, ___ (Colo.App. No. 06CA1857, Oct. 1, 2009) (where another division did "not approve" similar presumption argument made by same prosecutor in different case but held it was not plainly erroneous).
        We need not decide whether the argument was so obviously wrong as to be plain error because that would make no outcome-determinative difference here. Assuming it was obvious error, we still would not reverse the assault conviction because the prejudice from this argument (even combined with all the other improper arguments) was not sufficient to undermine our confidence in that verdict. Cf. Hamilton v. Mullin, 436 F.3d 1181, 1188-90 (10th Cir.2006) (accepting finding that constitutional error in similar presumption argument was harmless beyond a reasonable doubt).
        4. Distorting a key element of attempted first degree murder
        The prosecution's arguments also distorted a key element of attempted first degree murder. That crime requires that a defendant acted "after deliberation" with the intent to cause death. Â§ 18-3-102(1)(a), C.R.S.2009 (emphasis added); see Â§ 18-2-101(1), C.R.S.2009 (attempt requires same culpable intent as completed offense). This means the prosecution had to prove defendant acted "not only intentionally but also. . . after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." Â§ 18-3-101(3), C.R.S.2009.
        The rebuttal argument sought to harvest the fruits of seeds planted during voir dire, when the prosecutor questioned prospective jurors about factors they would "consider" in "exercising judgment and reflection" to decide whether to drive through a yellow light. Returning to this analogy, the prosecutor argued:
        

An example was used in our voir dire about a yellow light. What are the things 

228 P.3d 225

 you think about? Giving examples You think about a lot of things. You reflect and you judge. How long does it take? A second. That fast. Defendant exercised reflection and judgment.

        This analogy was inapt. Driving through a yellow light is not illegal or even necessarily negligent, see Â§ 42-4-604(1)(b)(I), C.R.S. 2009; Kepley v. Kim, 843 P.2d 133, 135 (Colo.App.1992), and typically is an inconsequential decision made hastily or impulsively rather than after true "deliberation." Cf. Green v. Post, 574 F.3d 1294, 1302-04 (10th Cir.2009) (officer speeding through yellow light in police chase did not act with deliberation required for constitutional tort liability).
        Nonetheless, we need not hold every possible permutation of a yellow-light argument to be plain error. What made this argument plainly wrong was the prosecutor's insistence that yellow-light deliberation could occur as "fast" as "a second."
        By obliterating any distinction between intentional and deliberative acts, the one-second-yellow-light argument contradicted Colorado law requiring that some "`appreciable length of time must have elapsed to allow deliberation, reflection and judgment.'" Key v. People, 715 P.2d 319, 322 (Colo.1986) (quoting People v. Sneed, 183 Colo. 96, 100, 514 P.2d 776, 778 (1973)). If deliberation could occur as "fast" as "a second," there would be nothing to the "appreciable length of time" requirement.
        The argument was an obvious misstatement of the deliberation element, which was a central focus of this trial. Prior cases have considered the propriety of analogous prosecution arguments that "the first degree murder element of `deliberation' only requires the time necessary for `one thought to follow another.'" People v. Grant, 174 P.3d 798, 810 (Colo.App.2007). The division in Grant wrote that these "prosecution comments referenced a legal standard that has not been in effect since 1973." Id. (citing Key and Sneed). In another case, "the attorney general conceded, and the division agreed," that "the prosecutor misstated the law" by arguing that deliberation was one thought following another. People v. Cevallos-Acosta, 140 P.3d 116, 123 (Colo.App. 2005).
        The one-second-deliberation argument was arguably even more, but plainly no less, improper than the discredited one-thought-follows-another argument. It is not self-evident that one thought ever could follow another in the space of just a second. But assuming separate thoughts could follow in so evanescent a time, one second of thinking could never amount to deliberation under settled Colorado law.
        B. Prejudice
        We now must determine whether all the plainly improper arguments caused sufficient prejudice to undermine the trial's fundamental fairness and our confidence in the verdicts. Relevant factors include: (1) "the specific nature of the error committed and the nature of the prejudice or risk of prejudice associated with it," Crider, 186 P.3d at 43; (2) the pervasiveness of the misconduct, Harris, 888 P.2d at 268; (3) the "context," including whether the improper prosecution remarks somehow were "invited" by improper defense arguments, Young, 470 U.S. at 11-13, 17-18, 105 S.Ct. 1038; and (4) the "strength of admissible evidence supporting the verdict," Crider, 186 P.3d at 43.
        First, the types of improper arguments made here threaten a defendant's right to a fair trial. The arguments not only were replete with long-discredited "liar" arguments and highly inflammatory personal attacks but also employed a one-second-yellow-light analogy that eviscerated a key legal element.
        Second, the improprieties were pervasive. They were even more wide-ranging in kind and degree than those in prior cases finding reversible and plain error, respectively. Berger, 295 U.S. at 89, 55 S.Ct. 629 ("we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential"); Harris, 888 P.2d at 268 ("the prosecutor's comments were repeated over 

228 P.3d 226
 the course of the entire closing argument, with a probable cumulative effect on the jury which cannot be disregarded as inconsequential") (internal quotations omitted).
        Third, the defense did nothing to invite the attacks. The "invited response" doctrine does not "license" improper arguments but can help gauge whether "taken in context, the arguments unfairly prejudiced the defendant." Young, 470 U.S. at 11-13, 105 S.Ct. 1038; see also People v. Salyer, 80 P.3d 831, 839 (Colo.App.2003) (division did "not condone all of the prosecutor's remarks" but because they were "responsive to defense arguments" seeking to elicit juror sympathy, they "were not so egregious and prejudicial as to constitute plain error").
        Finally, we consider the strength of the evidence. The closest issue involved whether defendant acted with the "deliberation" required for attempted first degree murder. Given the lack of any direct evidence as to when or why defendant decided to attempt to kill a victim who was preparing for an intimate holiday evening with him, the proof of this element was not so airtight as to eliminate any possible prejudice. Cf. People v. Madson, 638 P.2d 18, 26 (Colo.1981) (describing it as "a close" issue whether defendant acted after deliberation in Christmas Eve murder of a victim with whom he was in deteriorating relationship). In contrast, the evidence that defendant acted with the scienter required for first degree assaultâ"intent to cause serious bodily injury" to the victim, Â§ 18-3-202(1)(a), C.R.S.2009âwas overwhelming.
        We reverse only the attempted first degree murder conviction. Cf. Walters, 148 P.3d at 337-38 (plainly improper arguments required reversal of one count but not another). The plainly improper arguments so undermined the trial's fundamental fairness as to cast serious doubt on the reliability of the attempted murder conviction but not on the assault conviction.
        III. Remaining Issues
        Defendant also challenges: (a) the sufficiency of evidence of attempted first degree murder; (b) the admission of his prior violent acts against the victim; and (c) the sentences. The first issue remains significant because the People could not retry defendant if the evidence were insufficient. See Burks v. United States, 437 U.S. 1, 16-18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); People v. Lybarger, 700 P.2d 910, 916 (Colo.1985). The other issues affect the assault conviction and sentence.
        A. Sufficiency of Evidence of Deliberation
        Defendant contends the trial evidence was legally insufficient to prove deliberation. This contention must overcome a daunting standard: we construe the record in the light most favorable to the prosecution to determine whether any rational juror could have found guilt proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); People v. Lehnert, 163 P.3d 1111, 1115 (Colo.2007); People v. McNeely, 222 P.3d 370, ___ (Colo.App. 2009). This standard is so high, and the consequences to the rare defendant able to satisfy it so severe, that we apply it even where (as here) a defendant failed to preserve the challenge by raising it in the trial court. See, e.g., United States v. Gallant, 537 F.3d 1202, 1223 (10th Cir.2008); People v. Duncan, 109 P.3d 1044, 1045 (Colo.App.2004); People v. Harris, 633 P.2d 1095, 1099 (Colo.App.1981).
        The evidence sufficed to support the jury's finding beyond a reasonable doubt that defendant had acted after deliberation. While there was no direct proof, the "element of deliberation, like intent, can rarely be proven other than through circumstantial or indirect evidence." People v. District Court, 926 P.2d 567, 571 (Colo.1996). The evidence supporting a finding that defendant acted after deliberation (and not hastily or impulsively) in trying to kill the victim included the following: defendant once told the victim a shotgun bullet would be for her; defendant had been angry at the victim the prior night and apparently was brooding the day of the shooting; defendant had enough time in the minutes the victim was alone in the bedroom to reflect on what he was about to do; defendant had to retrieve the shotgun 

228 P.3d 227
 and (if his brother's testimony is discredited) to load it; defendant had to bring the loaded shotgun into the bedroom; and he then had to aim and apply pressure to shoot the round directly into the victim's face.
        B. Other Acts Evidence
        Defendant challenges the admission of evidence of his prior violent acts against the victim. The trial court allowed this evidence under CRE 404(b) and Â§ 18-6-801.5, C.R.S.2009 (evidence of prior incidents of domestic violence) after applying the four-part test from People v. Spoto, 795 P.2d 1314 (Colo.1990). The court had "substantial discretion" in making these evidentiary rulings, which we review with deference. Yusem v. People, 210 P.3d 458, 463 (Colo.2009); People v. Torres, 141 P.3d 931, 934 (Colo.App.2006).
        Spoto requires courts allowing other-acts evidence under CRE 404(b) to find the evidence: (1) "relates to a material fact"; (2) is "logically relevant"; (3) has such relevance "independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character"; and (4) passes the CRE 403 bar by having probative value that is not "substantially outweighed by the danger of unfair prejudice." 795 P.2d at 1318. Defendant focuses on the last two prongs, arguing in particular that the logical relevance of his prior domestic violence was not "independent" of the intermediate inference of bad character.
        The inference prohibited by evidentiary rules is that a person of bad character "acted in conformity therewith" in the charged incident. CRE 404(b). The third Spoto prong thus requires that other acts have non-propensity relevance. Because all evidence of other bad acts could support a propensity inference, Spoto "does not demand the absence of the inference" but "merely requires that the proffered evidence be logically relevant independent of that inference." People v. Snyder, 874 P.2d 1076, 1080 (Colo.1994). This requirement is met where there is "similarity" between the charged and uncharged acts, showing a "specific tendency" on the part of the defendant. Yusem, 210 P.3d at 466-67 (discussing cases upholding admission of Rule 404(b) evidence). In contrast, a "lack of similarity" raises the risk that a prior act "does not show a specific tendency that can be separated from the prohibited inference that a defendant acted badly in the past and therefore" must have committed the charged offense. Id. at 467.
        The trial court did not abuse its discretion in finding the third Spoto prong satisfied. The prior and charged acts were similar because all involved defendant's violent behavior toward the same victim in an ongoing relationship. The prior acts showed a specific tendency of defendant to act violently against the victim when he became frustrated. The evidence thus was tied with sufficient specificity to the charged offenses that it properly could be considered independently of the prohibited inference that defendant had a bad character. See, e.g., Torres, 141 P.3d at 934 (allowing evidence of defendant's prior domestic violence against victim); People v. Raglin, 21 P.3d 419, 424-25 (Colo.App.2000) (same).
        We similarly conclude the trial court did not abuse its discretion in balancing the Rule 403 factors of probative value and prejudice. Defendant's prior violent acts against the victim were highly probative, as they bore directly on whether the shooting was intentional (as the prosecution contended) or accidental (as defendant maintained). Such evidence always carries a potential of unfair prejudice, but it was within the trial court's discretion to find this risk did not substantially outweigh the probative value of the evidence.
        C. Sentencing
        Defendant contends the court: (1) violated his privilege against self-incrimination; and (2) imposed an unreasonable sentence. We review the first contention de novo, see Villanueva v. People, 199 P.3d 1228, 1231 (Colo.2008), and the second for abuse of discretion. People v. Leske, 957 P.2d 1030, 1042-43 (Colo.1998).
        1. Self-Incrimination
        In offering defendant the opportunity for allocution, the court referenced his "right to 

228 P.3d 228
 remain silent" and said it would not "hold that against" him. Defendant nonetheless chose to make a sentencing statement claiming the shooting "was a terrible accident" that was "not done on purpose" but occurred when "the gun accidentally discharged." The court in imposing sentence noted defendant's "pattern of evading and avoiding responsibility for what he had done." It cited his delay in making the 911 call, his initial vague claim that "someone" had shot the victim before he admitted being the shooter, and his statement to the victim right after the shooting suggesting she somehow was responsible. We will assume defendant is correct that the court also considered the allocution statement as an evasion of responsibility.
        The court did not punish defendant for exercising his privilege against self-incrimination. That privilege continues to apply at sentencing, Mitchell v. United States, 526 U.S. 314, 325-27, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), and we will assume it prevents a sentencing judge from considering a defendant's silence as "an aggravating" factor indicating "lack of remorse." People v. Young, 987 P.2d 889, 894-95 (Colo.App. 1999); but see Mitchell, 526 U.S. at 330, 119 S.Ct. 1307 (specifically not deciding this point); United States v. Cruzado-Laureano, 527 F.3d 231, 237 (1st Cir.2008) (rejecting contention that sentence at high end of federal guidelines violated privilege against self-incrimination because "it is well established that lack of remorse is a proper consideration in sentencing"); Lee v. Crouse, 451 F.3d 598, 605 n. 3 (10th Cir.2006) (noting that federal appellate courts "have readily confined Mitchell to its stated holding, and have allowed sentencing courts to rely on, or draw inferences from, a defendant's exercise of his Fifth Amendment rights for purposes other than determining the facts of the offense of conviction").
        Defendant's Fifth Amendment claim necessarily fails because he waived his right to remain silent at sentencing when he chose (in his words) to "speak my piece." See Mitchell, 526 U.S. at 321-22, 119 S.Ct. 1307. As the division held in People v. Villarreal, there is "no reason why the court could not consider what a defendant who chose to speak at sentencing said as well as what she did not say." 131 P.3d 1119, 1129 (Colo.App.2005). Defendant argues Villarreal was wrongly decided because it unfairly requires defendants to choose between providing allocution that might be used against them or else forgoing the right of allocution entirely. We disagree. There is no constitutional right to be free from a court considering a dissembling sentencing allocution.
        2. Reasonableness
        The court did not abuse its discretion by imposing a maximum sentence for this heinous assault. Defendant contends the court cited only aggravating factors without considering mitigating ones such as testimony that he had been a good citizen and father. But the court said it had carefully read the "mitigation packet," and it allowed mitigation witnesses to testify. That it did not expressly reference mitigating factors when explaining its sentence does not establish an abuse of discretion. See People v. Walker, 724 P.2d 666, 669 (Colo.1986); People v. Linares-Guzman, 195 P.3d 1130, 1137 (Colo.App.2008).
        IV. Conclusion
        Defendant's judgment of conviction and sentence on the assault count are affirmed, but the attempted murder conviction is reversed, and the case is remanded for further proceedings (including a new trial if the People so elect) on the attempted murder count.
        RUSSEL and STERNBERG*, JJ., concur.
        
--------
Notes:
        * Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, Â§ 5(3), and Â§ 24-51-1105, C.R.S.2009.
--------