23CA2026 Peo v Coleman 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2026
El Paso County District Court No. 22CR3800
Honorable Jessica L. Curtis, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Racaun Shavod Coleman,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Philip J. Weiser, Attorney General, Jenna Baker, Assistant Attorney General
Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 In this domestic violence case, Racaun Shavod Coleman appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree assault and harassment. He contends that (1) the district court plainly erred by instructing the jury that it "may" consider evidence of self-induced intoxication; (2) the district court abused its discretion by admitting evidence of his two prior acts of domestic violence against the victim; and (3) the cumulative effect of these two errors denied him the right to a fair trial. We affirm the conviction.

## I. Background

¶ 2 Coleman and the victim had been in an on-again, off-again relationship since high school and had a child together. One afternoon in 2022, Coleman was fired from his job and began a four-day binge of excessive drinking, from Wednesday through Saturday. During that time, he and the victim continuously

argued. By Friday, the victim told Coleman she was breaking up with him and took her children[1] to her mother's house.

¶ 3    On Saturday night, Coleman texted the victim that he had left their apartment and that it was okay for her to return home. The victim took the children back to the apartment and put them to bed before going outside to smoke, whereupon she saw Coleman returning to the apartment building. She tried to lock the apartment door but did not manage to do so in time, and Coleman forced his way into the apartment.

¶ 4    Feeling unsafe, the victim knocked on a neighbor's door. While she was waiting for the neighbor to answer, Coleman approached her, shoved her into the wall, stabbed her in the shoulder with a knife, and then walked away. Coleman testified that he was blackout drunk and had no recollection of anything that happened that Thursday through Saturday, including the stabbing.

¶ 5    The People charged Coleman with, as relevant here, first degree assault, harassment, and second degree assault as a lesser

_____

[1] The victim also has a daughter from a previous relationship.

included offense. At trial, Coleman did not dispute that he had stabbed the victim; instead, he claimed that his level of intoxication prevented him from forming the specific intent needed to commit first degree assault or harassment. The jury convicted him of both charges.

## II. Voluntary Intoxication Instruction

¶ 6     At Colman's request, the district court instructed the jury on the defense of voluntary intoxication:

> The evidence presented in this case has raised the question of self-induced intoxication with respect to the offenses of Assault in the First Degree and Harassment.
>
> For those offenses, you *may* consider evidence of self-induced intoxication in determining whether or not such intoxication negates the existence of the element of "with intent" or "intentionally".
>
> The prosecution has the burden of proving all the elements of the crimes charged beyond a reasonable doubt. If you find the defendant was intoxicated to such a degree that he did not have the mental state of "with intent" or "intentionally", which is a required element of the crimes of First Degree Assault and Harassment, you should find the defendant not guilty of those charges.
>
> This defense does not apply to the crime of Assault in the Second Degree (Recklessly).

(Emphasis added.)  This language essentially tracks the model criminal jury instruction on voluntary intoxication.  *See* COLJI-Crim. H:34 (2024).

¶ 7    Coleman contends that the district court plainly erred by using the permissive word "may," rather than the mandatory word "must," in the instruction.  We disagree.

## A.    Standard of Review

¶ 8    The district court has a duty to accurately instruct the jury on all matters of law applicable to a case.  *People v. DeGreat*, 2018 CO 83, ¶ 15.  We review jury instructions de novo, examining them as a whole, to determine whether they accurately informed the jury of the governing law.  *Johnson v. People*, 2019 CO 17, ¶¶ 8, 14.

¶ 9    Because Coleman did not object to the instruction, we would typically apply a plain error standard in determining whether any error warrants reversal.  *See Hagos v. People*, 2012 CO 63, ¶ 14.  However, we need not determine if there was plain error because we conclude that no error occurred.  *See Cardman v. People*, 2019 CO 73, ¶ 19 ("[P]lain error occurs when there is (1) an error, (2) that is obvious, and (3) that so undermines the fundamental fairness of the

trial itself as to cast serious doubt on the reliability of the judgment of conviction.").

## B.   Discussion

¶ 10    Two divisions of this court have held that the use of the term "may" in a voluntary intoxication instruction does not constitute error.  *See People v. Lucas*, 232 P.3d 155, 163-64 (Colo. App. 2009) (concluding that a jury instruction stating, "You may consider evidence of self-induced intoxication," was not erroneous), *overruled in part on other grounds by People v. Miller*, 2024 COA 66; *see also People v. Rosales*, 134 P.3d 429, 433 (Colo. App. 2005) (concluding that a jury instruction stating, "You may consider evidence of self-induced intoxication," did not constitute error affecting the defendant's substantial rights).  In both *Lucas* and *Rosales*, the divisions reasoned that the jury instructions, taken as a whole, "adequately informed the jury of the applicable law," did not lower the prosecution's burden "to prove each element of an offense beyond a reasonable doubt," and required the jury to consider all

the evidence. *Lucas*, 232 P.3d at 162-64; *see Rosales*, 134 P.3d at 434.

¶ 11     Undeterred, Coleman correctly notes that we are not bound by decisions from other divisions of this court, *see Chavez v. Chavez*, 2020 COA 70, ¶ 13, and argues that we should not follow *Lucas* and *Rosales*. He asserts that the voluntary intoxication instruction using the permissive word "may" was erroneous because (1) "it permitted the jury to disregard all evidence of Mr. Coleman's sole defense"; (2) it lowered the prosecution's burden of proof; and (3) it did not "track any statutory language." But we see no reason to depart from *Lucas* and *Rosales*, especially given that they addressed and rejected two of the arguments Coleman raises here.

¶ 12     First, as in *Lucas* and *Rosales*, the jury instructions in this case, when read as a whole, clearly required the jury to consider all the evidence presented during trial. *See Rosales*, 134 P.3d at 434; *Lucas*, 232 P.3d at 163. For example, the definitional instructions for first degree assault and harassment each twice instructed the jury to consider "all the evidence" when deciding whether the prosecution proved each element of the offense beyond a reasonable doubt, and another instruction told the jurors, "In making your

6

decision, you *must* consider all of the evidence that has been presented." (Emphasis added.) Indeed, the instructions used some variation of the phrase "after considering all of the evidence" no less than fifteen times. *See People v. McKeel,* 246 P.3d 638, 641 (Colo. 2010) ("We presume that jurors follow the instructions that they receive.").

¶ 13    We acknowledge that the prosecutor's statement during closing argument, "[The voluntary intoxication instruction] says you may consider it. You do not have to. It's up to you," could be read in isolation as suggesting that the jury was not obligated to consider evidence of voluntary intoxication.[2] But when the statement is viewed in context with the prosecutor's subsequent statements — for example, that "[d]runk minds can still form intent" and that "[Coleman] intended to [stab the victim] even though he was drunk, if he even was drunk" — it is clear that she was not telling the jury that it could ignore voluntary intoxication evidence altogether; she instead was telling the jury that Coleman had the requisite intent despite his intoxication. And the jury's

---

[2] Coleman did not object to the prosecutor's statement during trial and does not raise a claim of prosecutorial misconduct on appeal.

7

submission of a question about Coleman's blood alcohol content during deliberations demonstrates that it *did* consider evidence of his voluntary intoxication.[3]  In any event, a potentially inappropriate statement by counsel during closing argument does not render a correct jury instruction erroneous.

¶ 14    Second, using the permissive word "may" in the voluntary intoxication instruction did not lower the prosecution's burden of proof.  The instruction itself stated that the "prosecution ha[d] the burden of proving all the elements of the crimes charged beyond a reasonable doubt."  *See Lucas*, 232 P.3d at 163.  It also instructed the jurors, "If you find [Coleman] was intoxicated to such a degree that he did not have the mental state of 'with intent' or 'intentionally', which is a required element of the crimes of [f]irst [d]egree [a]ssault and [h]arassment, you should find [him] not guilty of those charges."  And as in *Lucas* and *Rosales*, multiple other instructions emphasized that the prosecution carries the burden of proving every element beyond a reasonable doubt, including one

---

[3] The jury's question itself is not included in the appellate record, but the district court's discussion with the parties about how to respond to the question is.

that stated, "The culpable state of mind is as much an element of the crime as the act itself and must be proven beyond a reasonable doubt." *See id.*; *Rosales*, 134 P.3d at 434.

¶ 15 Moreover, unlike an affirmative defense, which the prosecution must separately disprove beyond a reasonable doubt, *Ray v. People*, 2019 CO 21, ¶ 13, voluntary intoxication is an element-negating defense and, thus, is necessarily disproved when the jury convicts the defendant of the crime to which the defense applies, *Montoya v. People*, 2017 CO 40, ¶ 29.

¶ 16 Third, we are not persuaded by Coleman's argument that using "may" in a voluntary intoxication instruction is erroneous because it does not "track any statutory language." The pertinent statute provides as follows:

> Intoxication of the accused is not a defense to a criminal charge, except as provided in [the subsection addressing involuntary intoxication], but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant when it is relevant to negative the existence of a specific intent if such intent is an element of the crime charged.

§ 18-1-804(1), C.R.S. 2024. This statute allows a defendant to introduce evidence of voluntary intoxication — though not as an

affirmative defense — in certain circumstances; it simply does not touch on how the jury should be instructed to consider such evidence. In other words, there is no relevant statutory language for the instruction to track.

¶ 17    In sum, the district court did not err by instructing the jury that it "may consider evidence of self-induced intoxication in determining whether such intoxication negates the existence of the element of 'with intent' or 'intentionally.'"

### III.    Admission of Prior Acts of Domestic Violence

¶ 18    Over Coleman's objection, the prosecution elicited testimony from the victim that Coleman had committed the following two prior acts of domestic violence:

- Approximately six years before the stabbing, Coleman, after drinking for "a good portion of that day," got into an argument with the victim, struck her with an open hand, and then "wrestl[ed] [her] to keep [her] in the house" when she tried to flee.

- Approximately four years before the stabbing, Coleman and the victim got into an argument while in the victim's car; when they got home, he went inside to grab

10

a pocketknife and then stabbed the car's rear tires. The victim "had red marks and swelling" from a "little tusk [sic] that [they] had in the car." This incident did not involve alcohol.

Immediately before the victim provided this testimony and again at the conclusion of trial, the district court instructed the jury that it could consider the testimony only for the limited purpose of showing Coleman's intent.

¶ 19 Coleman contends that the district court abused its discretion by admitting this evidence. We are not persuaded.

### A. Governing Law and Standard of Review

¶ 20 CRE 404(b) prohibits using evidence of a defendant's prior acts to prove his character to show that he acted in conformity with that character on a particular occasion. However, evidence of a prior act may be admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." CRE 404(b)(2).

¶ 21 Additionally, when the prior act is an act of domestic violence, the evidence is generally considered "helpful and . . . necessary" to establish, among other things, the "escalating levels of seriousness"

11

of the domestic violence.  § 18-6-801.5(1), C.R.S. 2024; *see also*

*People v. Cross*, 2023 COA 24, ¶ 22 (In enacting section 18-6-801.5,

the legislature intended to "place[] its finger on the scale in favor of

admitting evidence of prior acts of domestic violence in prosecutions

involving domestic violence.").

¶ 22    Evidence is admissible under Rule 404(b) or section

18-6-801.5 only if it satisfies the four-part test articulated in

*People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  First, the

evidence must relate to a material fact.  *Id.* at 1318.  Second, the

evidence must be logically relevant to that material fact: It must

tend to make the existence of the material fact more or less

probable.  *Id.*  Third, the logical relevance must be independent of

the prohibited character inference.  *Id.*  Fourth, the evidence's

probative value must not be substantially outweighed by the danger

of unfair prejudice.  *Id.*

¶ 23    The district court has substantial discretion in deciding

whether to admit evidence of other acts.  *Perez v. People*, 2015 CO

45, ¶ 22.  We will not disturb the court's decision absent a showing

that it was manifestly arbitrary, unreasonable, or unfair or was

based on a misapprehension or misapplication of the law. *Gonzales v. People*, 2020 CO 71, ¶ 25.

## B. Discussion

¶ 24 Coleman challenges only the district court's findings under the third and fourth *Spoto* prongs: He contends that (1) the prior act evidence was not logically relevant independent of a prohibited propensity inference, and (2) the probative value of the evidence was outweighed by the danger of unfair prejudice.

¶ 25 We begin by concluding that the district court did not abuse its discretion by finding the prosecution satisfied the third *Spoto* prong.

¶ 26 "[T]he requirement that the evidence have relevance independent of an inference of conformity with bad character does not 'demand the absence of the inference' entirely, but simply means that the evidence cannot be relevant *only* to show a propensity to commit crimes." *People v. Denhartog*, 2019 COA 23, ¶ 42 (quoting *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994)). The third prong is satisfied when there is similarity between the charged and uncharged acts, showing a specific tendency on the part of the defendant. *People v. McBride*, 228 P.3d 216, 227 (Colo.

App. 2009). A lack of similarity, in contrast, raises the risk that a prior act does not show a specific tendency that can be separated from the prohibited inference that the defendant acted badly in the past and therefore must have committed the charged offense. *Id.*

¶ 27    In both prior acts of domestic violence, Coleman had a physical altercation with the same victim after an argument. Thus, evidence of the prior acts showed a specific tendency for Coleman to respond to arguments with the victim by getting angry and acting violently toward her. This specific tendency was logically relevant to the critical disputed issue in the case — whether Coleman's act was intentional despite his intoxication — and its relevance was independent of any propensity inference. *See Cross*, ¶ 24 (evidence of the defendant's prior acts of domestic violence against the victim was admissible to prove motive, intent, and lack of accident); *People v. Vasquez*, 2022 COA 100, ¶ 77 (evidence of the defendant's prior act of breaking the victim's television during an argument was admissible to prove lack of accident); *McBride*, 228 P.3d at 227 (evidence of the defendant's prior acts of punching, beating, and choking the victim was admissible to prove intent and to rebut a claim of accident); *People v. Gross*, 39 P.3d 1279, 1282 (Colo. App.

14

2001) (evidence of prior acts of domestic violence against the victim was admissible to prove motive and intent).

¶ 28     We are not persuaded otherwise by Coleman's contention that the two prior acts were too dissimilar to the charged offense to have any relevance apart from a propensity inference.  As with the stabbing, Coleman committed both prior acts after having an argument with the victim, and he committed the first of the prior acts while he was drunk.  *See McBride*, 228 P.3d at 227 ("The prior and charged acts were similar because all involved defendant's violent behavior toward the same victim in an ongoing relationship.").  Coleman points out that, unlike with the prior acts, this argument with the victim occurred the day before the stabbing, and he was allegedly blackout drunk.  But these differences do not outweigh the other similarities, particularly given that, through section 18-6-801.5, "the General Assembly placed its finger on the

scale in favor of admitting evidence of prior acts of domestic violence in prosecutions involving domestic violence." *Cross*, ¶ 22.

¶ 29     Turning to the fourth *Spoto* prong, the district court did not abuse its discretion in balancing the relevance of the prior acts against the risk of unfair prejudice.

¶ 30     Although the evidence of prior acts carried a risk of undue prejudice, we are not persuaded that this risk substantially outweighed the probative value of the evidence. *See People v. Hamilton*, 2019 COA 101, ¶ 70 (CRE 403 favors the admission of relevant evidence and requires us to afford the evidence its "maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected."). The prior acts evidence was relevant to whether Coleman had the intent to stab the victim despite his intoxication — the central dispute at trial — and therefore was highly probative.

¶ 31     Further, the district court minimized the prejudicial effect by contemporaneously instructing the jury to consider the evidence only for the purpose of assessing Coleman's intent. Absent evidence to the contrary, we presume the jury followed the court's limiting instruction and did not consider the evidence for any other

purpose.  *See McKeel*, 246 P.3d at 641.  Thus, "while prior act evidence always carries a risk of unfair prejudice, it was within the district court's discretion to find this risk did not substantially outweigh the probative value of the evidence."  *Denhartog*, ¶ 47; *see McBride*, 228 P.3d at 227.

¶ 32    Accordingly, we conclude that the district court did not abuse its discretion by admitting the evidence of Coleman's prior acts of domestic violence.

## IV.    Cumulative Error

¶ 33    Finally, Coleman contends that the cumulative effect of the alleged errors in his trial mandates reversal.  Under the cumulative error doctrine, "numerous formal irregularities, each of which in itself might be deemed harmless, may in the aggregate show the absence of a fair trial, in which event a reversal would be required."  *Oaks v. People*, 371 P.2d 443, 446 (Colo. 1962).  But "[f]or reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice[d]" the defendant's substantial rights.  *Howard-Walker v. People*, 2019 CO 69, ¶ 25.  Because we conclude that the district court did not err, a cumulative error analysis is not required, and reversal is not

17

warranted. *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009) (cumulative error analysis is required only when multiple errors have been identified).

V. Disposition

¶ 34 The judgment is affirmed.

JUDGE TOW and JUDGE SULLIVAN concur.