The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 12, 2019

**2019COA180**

**No. 16CA2168, *People v. Meils* — Crimes — Sexual Exploitation
of a Child — Sexually Exploitive Material; Constitutional Law —
Fifth Amendment — Double Jeopardy**

A division of the court of appeals considers whether section

18-6-403(3)(b)-(b.5), C.R.S. 2019, prescribes alternative means of

committing sexual exploitation of a child.  The division concludes

that, because the legislature wrote the statute in the disjunctive,

listing a series of acts referencing the same subject, governed by a

common mens rea, it prescribes alternative ways of committing the

same offense.  Thus, a defendant cannot be convicted of both

possession and creation of sexually exploitative materials for a

single incident.

Additionally, the division rejects the defendant's contention

that the trial court denied him his right to a complete defense by

excluding certain evidence supporting his alternate suspect theory.

It also rejects the defendant's argument that the prosecutor committed misconduct during closing arguments. Finally, the division concludes that given the weight of the evidence against the defendant, any error in admitting improper expert testimony in the guise of lay witness testimony did not affect the outcome of the trial.

Accordingly, the division affirms the judgment in part, vacates three of the four convictions, and remands to the trial court for a correction of the mittimus.

COLORADO COURT OF APPEALS                                    2019COA180

Court of Appeals No. 16CA2168
Jefferson County District Court No. 14CR2865
Honorable Jeffrey R. Pilkington, Judge

The People of the State of Colorado,

Plaintiff-Appellee

v.

David Lee Meils,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Pawar and Davidson*, JJ., concur

Announced December 12, 2019

Philip J. Weiser, Attorney General, Grant R. Fevurly, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica Sommer, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1 Defendant, David Lee Meils, appeals the judgment of conviction entered on a jury verdict finding him guilty of four counts of sexual exploitation of a child. He argues that the trial court erred in excluding alternate suspect evidence, allowing the prosecutor to commit misconduct during closing arguments, and permitting improper witness testimony. He further contends that his four convictions for sexual exploitation of a child violate his right to be free from double jeopardy. We affirm in part and vacate his convictions on counts 2, 3, and 4.

## I. Background

¶ 2 On November 4, 2014, Meils's wife, H.M., found on Meils work phone four photos of the naked victim — her ten-year-old daughter — and two videos of her undressing. The photos showed a time stamp of November 3, 2014, at 3:58 p.m., and the video showed a time stamp of November 4. H.M. testified that, based on the victim's outfit, she knew the video was taken on November 3, despite its time stamps of November 4. Both the photos and the video appeared to have been taken from outside the master bathroom through a gap between the bathroom door and the floor.

1

¶ 3    H.M. attempted to send the photos and videos to herself or take a picture of them with her phone to gather proof, fearing that they might be deleted.  When her efforts failed, she woke up Autumn Stoffel, a friend living at the house.  Stoffel took a photo of one of the photos, including its time stamp, on Meils's phone.  Both women then went to a hotel to call the police, leaving Meils's phone at the house.

¶ 4    At trial, both women testified that they initially suspected that Meils's thirteen-year-old son, D.M., had taken the pictures and videos.  However, Stoffel stated that she had observed D.M. in the living room at the time shown on the time stamps.  Aside from Stoffel, Meils was the only other person home at the time.  Stoffel recalled hearing Meils tell the victim to "get in the shower," seeing him come downstairs with laundry, and then seeing him run back upstairs.

¶ 5    Meils called H.M. while she was at the hotel and again while law enforcement officers were present at the hotel.  Both times, she answered with the call on speaker phone.  During the course of the calls, she asked him if "there was anything that would make [her] leave the house."  He responded, "About those pictures," and "I'm

2

sorry." He then proceeded to make inculpatory statements. He explained that H.M. had told him that the victim "was coming into puberty and it had made him curious." He blamed H.M. because she mentioned that the victim's "breasts were bigger than her own." Then, he said that making the videos "was retarded and the biggest mistake of [his] life," and he did it out of "[s]heer curiosity and perversion." H.M. asked how he did it, and he responded that he "put the phone outside the door." He also threated to kill himself at one point during the call.

¶ 6 A short time later, law enforcement officers arrested Meils. He voluntarily surrendered his work and personal phones as well as an iPad. Though officers did not find the photos and videos when they initially looked at his phone, a forensic analyst later recovered from Meils's work phone two videos and nineteen photographs of the victim undressing and getting in the shower — all captured between 6:34 p.m. and 6:46 p.m. on October 2, 2014. (The police did not find images time stamped in November 2014.) The analysis also uncovered what appeared to be test images of the bathroom viewed from the gap between the door and the floor taken minutes before the photos and videos of the victim were taken.

¶ 7    The district attorney charged Meils with four counts of sexual exploitation of a child and one count of invasion of privacy for sexual gratification — all with a date range of October 2, 2014 to November 5, 2014.

¶ 8    The defense's theory of the case focused on an alternate suspect, accusing D.M. of taking the photos and videos of the victim.  Support for the theory included evidence of D.M. hoarding women's underwear, including the victim's, and that on October 2 he did not have access to his cell phone or computer (thus, suggesting that he had used his father's phone).  The prosecution emphasized the events of November 3, when D.M. was purportedly in the living room when the photos and videos were taken.  It also highlighted Meils's immediate confession and apology when confronted by H.M.

¶ 9    The jury convicted Meils of all five counts, and the trial court sentenced him to a total of ten years in the custody of the Department of Corrections.

## II.  Alternate Suspect

¶ 10    Meils contends that the trial court denied him his right to present a complete defense by excluding certain evidence

supporting his alternate suspect theory.  We conclude that any error was harmless.

## A.  Standard of Review

¶ 11    We review a trial court's evidentiary rulings for an abuse of discretion.  *People v. Elmarr*, 2015 CO 53, ¶ 20, 351 P.3d 431, 437–38.  A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication or misunderstanding of the law.  *Id.* at ¶ 20, 351 P.3d at 438.

¶ 12    However, we do not reverse unless there exists a reasonable probability that an error influenced the verdict or affected the fairness of the trial, contributing to the defendant's conviction.  *Yusem v. People*, 210 P.3d 458, 469 (Colo. 2009).

## B.  Applicable Law

¶ 13    In the case of an alternate suspect theory, evidence of another person's motive or opportunity to commit the charged crime "is insufficient; a defendant must proffer something 'more' to establish the non-speculative connection."  *Elmarr*, ¶ 34, 351 P.3d at 441 (discussing *People v. Mulligan*, 193 Colo. 509, 568 P.2d 449 (1977)).  Thus, "the overarching relevance inquiry remains whether the

evidence, taken collectively, establishes a non-speculative connection between the alternate suspect and the charged crime." *Id.* at ¶ 40, 351 P.3d at 441.

### C. Relevant Facts and Analysis

¶ 14    Before trial, the defense sought to introduce evidence of D.M.'s preoccupation with sex that, when taken together with evidence heard by the jury that he hoarded the victim's underwear and did not have his phone on October 2, suggested he was the perpetrator. The trial court, in a thorough, detailed order, denied introduction of the alternate suspect evidence because, in essence, the potential for prejudice or confusion of such evidence substantially outweighed any probative value.

¶ 15    Our review of the record as a whole leads us to conclude that overwhelming evidence supported Meils's conviction. H.M. found the photos and videos on his phone, and Stoffel testified that Meils was upstairs and D.M. was downstairs during the November 3 incident. Significantly, during H.M.'s two phone calls with Meils, he immediately confessed to taking the photos and videos, and he told H.M. how he had taken them, and made other inculpatory statements. Moreover, the jury heard evidence of D.M. hoarding

women's underwear in his bedroom and not having access to his phone on October 2. Notably, none of the evidence excluded by the trial court related to any interaction between D.M. and the victim. Under these circumstances, we conclude that any error in denying admission of the proffered evidence of D.M.'s alleged sexual conduct did not substantially affect the outcome of the trial, and therefore any error in the trial court's exclusion of some of the proffered alternate suspect evidence was harmless.

### III. Prosecutorial Misconduct

¶ 16 Meils argues that the trial court erred by allowing the prosecutor to commit misconduct by misstating critical evidence and asking the jury to draw an inference based on the absence of evidence that had been excluded. We disagree.

### A. Relevant Facts

¶ 17 During closing arguments, the prosecutor argued: "[I]n November of 2014, [D.M.] has his own phone. [D.M.] doesn't need to borrow the defendant's phone. He has his own phone in November. Interestingly, [H.M.] remembers that specifically on October 2nd, [D.M.]'s phone was taken away for that one day." Defense counsel objected and argued at the bench that the

comment was barred by the court's pretrial ruling to suppress discussion of the reason D.M. did not have his phone on October 2. He also voiced concern about the prosecutor's implication that H.M. had fabricated that D.M.'s phone was confiscated that day. The court sustained the objection and issued a curative instruction stating that "the evidence in this case was that [D.M.] did not have access to a cell phone on October 2nd. The evidence was not that he had his cell phone taken away."

¶ 18    During rebuttal, the prosecutor told the jury that "[H.M.]'s parental instincts were spot on November 4th of 2014 when she said, [Meils] did this, the defendant did this which is why she confronted him." Defense counsel did not object.

¶ 19    The prosecutor also highlighted that, while H.M. remembered some details from October 2, she could not recall — or could only vaguely recall — others.

> [S]he doesn't remember what time the defendant got home, where the defendant was, whether he was home for dinner, what phone she called him on, whether he had his work or cell phone with him, where his phones were. She doesn't remember any of that. So there's certain things she remembers. There's certain things she doesn't remember.

Again, defense counsel did not lodge an objection.

## B.  Standard of Review

¶ 20     We engage in a two-step analysis to review claims of prosecutorial misconduct.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances.  *Id.* Second, we decide whether, under the proper standard of review, any misconduct warrants reversal.  *Id.*

¶ 21     We review misconduct of nonconstitutional magnitude to which the defense objected at trial for harmless error.  *Id.* at 1097. Under this standard, misconduct does not require reversal if there is no reasonable probability it contributed to the verdict.  *Crider v. People*, 186 P.3d 39, 44 (Colo. 2008).

¶ 22     However, we review alleged misconduct not objected to at trial for plain error.  *Wend*, 235 P.3d at 1097.  Under this standard, reversal is warranted only when prosecutorial misconduct is "flagrantly, glaringly, or tremendously improper," *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)), and "so undermines the

fundamental fairness of the trial itself as to cast serious doubt on the reliability of the jury's verdict." *Id.*

## C. Applicable Law and Analysis

¶ 23    We address each of the three alleged improper arguments in turn.

¶ 24    Generally, a curative instruction will remedy any prejudice caused by an improper argument. *People v. Pesis,* 189 Colo. 52, 54-55, 536 P.2d 824, 826 (1975); *People v. Mersman,* 148 P.3d 199, 203 (Colo. App. 2006).  Here, the court remedied the first instance of alleged prosecutorial misconduct with a curative instruction.  In so doing, the court informed the jury that it should not consider the prosecutor's statement as evidence.  Thus, in regard to the first alleged instance of misconduct, the court alleviated any improper argument.

¶ 25    Turning to the second argument, we first note that prosecutors enjoy broad discretion in crafting their closing arguments and may argue all reasonable inferences from the evidence in the record. *Domingo-Gomez,* 125 P.3d at 1048.  "Given the wide latitude granted to the prosecutor in closing arguments, the trial court is best positioned to determine whether the

prosecutor's conduct was improper considering contemporaneous circumstances." *People v. Sandoval*, 2018 COA 156, ¶ 39, ___P.3d___, ___. Thus, "[p]rosecutorial misconduct in closing argument rarely constitutes plain error." *People v. Cevallos-Acosta*, 140 P.3d 116, 123 (Colo. App. 2005). Though H.M. admitted that she initially thought it was D.M. who took the photos and videos, she testified that, after learning that Stoffel saw D.M. in the living room when the photos and videos were taken, she felt that the only person who could have been responsible was Meils. Thus, the prosecutor did not mislead the jury. Instead, the prosecutor used the evidence to draw a reasonable inference to explain why H.M. confronted Meils. We perceive no error, much less plain error, in this statement.

¶ 26     Similarly, we analyze the third statement by the prosecutor under plain error review. Meils argues that H.M. *did* remember that Meils was late for dinner, that he got home around seven or eight o'clock, and where he was before that. He further asserts that H.M. testified that she "probably called him on his personal phone first," and, in any event, nobody ever asked H.M. whether Meils had his work or cell phone with him or where the phones were at the time.

¶ 27    H.M. testified that she did not remember exactly what time Meils arrived home that evening, but "*probably* . . . around 7:00 or maybe 8 . . . ." (Emphasis added.)  Further, she said that she *probably* called him on his personal phone first and she had to call him to determine where he was at the time.  The uncertainty in H.M.'s testimony suggests that she did not remember these details clearly; thus, the prosecutor's arguments that she did not remember were not precisely based on the evidence presented at trial.  Though H.M. testified that Meils was late for dinner, the People contend that the prosecutor saying that H.M. did not remember if he was home for dinner was not so obvious as to alert the trial judge of an error without Meils's objection.  Moreover, defense counsel addressed these statements in his closing arguments, pointing out that "[H.M.] told you she remembers that day well . . . ."

¶ 28    Therefore, after reviewing the record, we conclude that the prosecutor's remarks, though inartful, did not constitute plain error.

## IV. Witness Testimony

¶ 29    Meils contends that the trial court erred in admitting expert testimony in the guise of lay witness testimony by Susan Scohy, an investigative technician, and unhelpful testimony by Detective Matt Clark.  We conclude that any error was harmless.

### A. Relevant Facts

¶ 30    Scohy recovered the two videos and nineteen photos from Meils's iPhone and determined they were taken on October 2.  At trial, she explained her training and experience in extracting this type of data.  She also told the jury that to do so, she plugged the phone into her extracting device, accessed certain software, and generated a report.  She further said that deleted data may sometimes be recovered, but that the use of a lot of data subsequent to deletion of the images may erase the images to make room for more storage.  Defense counsel did not object to this testimony.

¶ 31    During cross-examination, defense counsel questioned Scohy about her lack of formal training concerning cell phone data extraction.  Defense counsel also inquired about deleted data and how it is overwritten.

¶ 32    The jury later asked Scohy multiple questions.  The court rejected all but one: "Would a phone use up all of its data before overwriting any files, or would it overwrite deleted files before taking up new space?"  Defense counsel objected, stating that it called for expert testimony, but the trial court overruled the objection "because those issues have been gone over in both direct and cross."

¶ 33    The prosecution used this testimony to show that there were two incidents of sexual misconduct — on October 2 and November 3.

¶ 34    Detective Clark was the lead investigator in the case.  He testified that none of the photos found on Meils's phone from October 2 matched those on Stoffel's phone (the photos found by H.M. on November 4).  He explained that, by looking at the photos side-by-side, he determined that they were different.  Through his comparison, and a comparison of the videos found and those described by H.M., he concluded there must have been two separate incidents.  Defense counsel did not object.

## B. Standard of Review

¶ 35    We review a trial court's evidentiary rulings for an abuse of discretion. *Elmarr*, ¶ 20, 351 P.3d at 437-38. For preserved errors, the standard of reversal is nonconstitutional harmless error. *People v. Stewart*, 55 P.3d 107, 122 (Colo. 2002). However, unpreserved errors are reviewed for plain error, and therefore we reverse only if the error is obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120.

## C. Applicable Law and Analysis

¶ 36    Given that all images that Scohy testified about had already been admitted into evidence, we conclude that any error in admitting the testimony was harmless and not plain error. Meils's argument hinges on his disagreement with the prosecution's theory that the images were taken on two separate dates. Defense counsel emphasized during closing arguments: "It's about whether David Meils took the photos and videos." Meils alleges that he had an alibi on October 2 but not November 3; thus, without proof that images were taken on November 3, his convictions cannot stand. However, even without Detective Clark's testimony, the jury had ample evidence from H.M.'s and Stoffel's testimony and the photos

taken of Meils's phone on Stoffel's phone to find him guilty of sexual exploitation. Significantly, as noted, he twice admitted to having taken the photos and videos during his phone call with H.M.[1]

¶ 37     Accordingly, we conclude that any error in admitting testimony by Scohy or Detective Clark did not affect the outcome of the trial and was therefore harmless.

## V. Double Jeopardy

¶ 38     Meils contends that his multiple convictions for sexual exploitation of a child violate his right to be free from double jeopardy because section 18-6-403(3), C.R.S. 2019, prescribes alternative methods of committing the same offense. Therefore, he argues they must merge, and we must vacate his convictions for counts 2, 3, and 4. We agree.

---

[1] The jury was instructed that, to find Meils guilty of sexual exploitation in counts 2, 3, and 4, it must find that he knowingly possessed sexually exploitative material, for any purpose, on or between November 3 and November 5.

## A. Standard of Review

¶ 39    We review de novo a claim that multiplicitous convictions violate a defendant's right to be free from double jeopardy. *Lucero v. People*, 2012 CO 7, ¶ 19, 272 P.3d 1063, 1065.

## B. Applicable Law and Analysis

¶ 40    "Multiplicity is the charging of the same offense in several counts, culminating in multiple punishments." *People v. McMinn*, 2013 COA 94, ¶ 19, 412 P.3d 551, 557. Multiplicitous "convictions are prohibited because they violate the constitutional prohibition against double jeopardy." *Id.*

¶ 41    First, we must identify the unit of prosecution.[2] *Id.* at ¶ 20, 412 P.3d at 558. The unit of prosecution determines whether a

---

[2] Another division of our court recently addressed section 18-6-403(3)(b.5) and (5), C.R.S. 2019, to determine the unit of prosecution for sexual exploitation of a child. *People v. Bott*, 2019 COA 100, ¶ 62, ___ P.3d ___, ___. The division concluded:

> Under the plain and unambiguous language of the statute, the unit of prosecution is an act of possession, not an individual image. The statute refers to the singular "possession" of sexually exploitative material and instructs that, if "*[t]he* possession" is of more than twenty images, the defendant may be punished more severely. § 18-6-403(5)(b)(II) . . . .

defendant's conduct can be divided into discrete acts for purposes of multiple offenses. *Quintano v. People*, 105 P.3d 585, 590 (Colo. 2005). Once we determine the unit of prosecution, we must address whether the evidence supporting each offense justified multiple charges. *People v. Abiodun*, 111 P.3d 462, 467-68 (Colo. 2005).

¶ 42 To respond to Meils's argument, we must consider whether the statute prescribes alternative means of committing the same offense under *Abiodun*. *See People v. Friend*, 2014 COA 123M, ¶¶ 71– 72, 431 P.3d 614, 629, *aff'd in part and rev'd in part*, 2018 CO 90, 429 P.3d 1191. As relevant here, the statute reads:

> (3) A person commits sexual exploitation of a child if, for any purpose, he or she knowingly:
>
> . . . .
>
> (b) Prepares, arranges for, publishes, including but not limited to publishing through digital or electronic means, produces, promotes, makes, sells, finances, offers, exhibits, advertises, deals in, or distributes, including but not

---

*Id.* at ¶ 63, ___ P.3d at ___. In so doing, it determined that the defendant's "possession of the memory card containing 294 images subjected him to only one conviction under section 18-6-403(3)(b.5), C.R.S. 2018." *Id.* at ¶ 69, ___ P.3d at 12. We need not address *Bott* in the circumstances presented here.

> limited to distributing through digital or electronic means, any sexually exploitative material; *or*
>
> (b.5) Possesses or controls any sexually exploitative material for any purpose . . . .

§ 18-6-403, C.R.S. 2019 (emphasis added).

¶ 43     "[B]y joining alternatives disjunctively in a single provision of the criminal code, the legislature intended to describe alternate ways of committing a single crime rather than to create separate offenses." *Abiodun*, 111 P.3d at 467; *see also Schneider v. People*, 2016 CO 70, ¶ 13, 382 P.3d 835, 839; *Woellhaf v. People*, 105 P.3d 209, 217 (Colo. 2005).  Therefore, we conclude that, because section 18-6-403(3) is written in the disjunctive, constructed as a series of acts referencing the same subject — sexually exploitative materials — and governed by a common mens rea, it prescribes alternative ways of committing the same offense.  *Id.* at 466.

¶ 44     Meils was convicted of four counts of sexual exploitation of a child under section 18-6-403(3). The date range for all counts was October 1, 2014 to November 5, 2014.  Notably, there is no indication that the prosecution intended to demonstrate that count 1 occurred at a different time than counts 2, 3, and 4.  *See Quintano*, 105 P.3d at 592 (stating that the court must "look to all

the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses"). In *Quintano*, the supreme court determined that, because "the defendant's conduct was separate in temporal proximity and constituted a new volitional departure in his course of conduct," the evidence supported five separate offenses. *Id.* Here, neither party argued that the multiple charges resulted from discrete offenses committed at different times. Rather, the only temporal element focused on by the parties was whether all of the offenses occurred on the November date — when Meils did not have an alibi — or in October, when Meils had an alibi. Thus, Meils cannot be convicted of both creating and possessing sexually exploitative material.

¶ 45    As the People note, multiplicitous convictions must merge, and in so doing, we must maximize the effect of the jury verdicts. *See People v. Glover*, 893 P.2d 1311, 1314-15 (Colo. 1995); *see also Friend*, ¶¶ 71-72, 431 P.3d at 629 (maximizing the effect of the jury verdict by merging convictions that carried different penalties into the most serious offense). Thus, counts 2, 3, and 4 (class 4

20

felonies) must merge into count 1 (a class 3 felony) because it is the most serious of the charges.

## VI. Conclusion

¶ 46 Accordingly, the judgment is affirmed as to count 1, the convictions on counts 2, 3, and 4 are vacated, and we remand to the trial court for correction of the mittimus.

JUDGE PAWAR and JUDGE DAVIDSON concur.