23CA0716 Peo v Piel 09-25-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0716
Weld County District Court No. 21CR1749
Honorable Allison J. Esser, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Clinton William Piel,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 25, 2025

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

¶ 1     A jury convicted defendant, Clinton William Piel, of assault with a deadly weapon, which he committed against his stepfather, Mark Nelson.  Piel appeals, contending that the trial court improperly limited his attorney's cross-examination of a police officer and erroneously declined to provide the jury his tendered instruction defining "deadly weapon."  We affirm.

## I.     Background

¶ 2     Piel lived with his mother and Nelson.  One morning, Nelson asked Piel not to touch the house's sprinkler system; that evening, Piel's mother made the same request.  Piel became angry, lashing out verbally at both his mother and Nelson.  After several minutes, the situation seemed to be de-escalating, and Nelson thought he saw Piel move to get a cup of coffee.  Instead, Piel stabbed Nelson in his right upper arm with a steak knife.[1]

¶ 3     By all accounts, Piel did not attempt to stab his mother or attempt to stab Nelson again.  Piel's mother and Nelson went to the hospital to treat the injury.  Nelson's wound required four staples.

---

[1] The steak knife had plastic grips riveted to metal and a metal blade exceeding four inches in length.

Piel was arrested and charged with attempted murder, a class 3 felony, and second degree assault, a class 4 felony.

¶ 4     At trial, the prosecution called Officer David Driscoll, who responded to the incident and interviewed both Nelson and medical personnel at the hospital.  During cross-examination of Driscoll, Piel's attorney read aloud the legal definition of serious bodily injury while framing a question.  The prosecutor objected on relevancy grounds because Piel was not charged with inflicting serious bodily injury and because the question called for Driscoll to provide an improper legal opinion based on hearsay.  The court sustained the objection and did not permit Driscoll to provide any opinion testimony about the legal definition of serious bodily injury or whether the medical personnel who treated Nelson found evidence thereof.

¶ 5     Before the court finalized the jury instructions, Piel's counsel requested a theory of defense instruction that contained the following explanation of how and when a knife could be considered a deadly weapon:

> Knives are not automatically deadly weapons, and are only considered deadly weapons if the specific way they are used or intended to be

> used *in a particular incident* is capable of producing death or serious bodily injury.

(Emphasis added.); *see* § 18-1-901(3)(e)(II), C.R.S. 2025 (defining deadly weapon, as relevant here, to include "[a] knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury"); COLJI-Crim. F:88 (2024) (tracking this statutory language).

¶ 6    When the court declined to provide this language, Piel's counsel requested the court modify the deadly weapon instruction to include the "in a particular incident" language. Piel's counsel argued that this phrase was necessary to avoid any jury confusion and possible misinterpretation regarding whether the definition's "use or intended use" language referred specially to Piel's charged conduct or to the knife's general intended use. The court declined to include the language Piel's counsel requested, concluding that the following instruction was sufficiently clear:

> "*DEADLY WEAPON*" means any of the following in which the manner it is used or intended to be used is capable of producing death or serious bodily injury.
>
> a. A knife;

b. A bludgeon; or

c. Any other weapon device, instrument, material, or substance, whether animate or inanimate.

¶ 7    After deliberations, the jury acquitted Piel of the attempted murder charge and convicted him of second degree assault with a deadly weapon. The court sentenced him to eight years in the custody of the Department of Corrections.

## II.    Analysis

¶ 8    Piel raises two issues on appeal. First, he contends the trial court erred by not permitting his attorney to cross-examine Officer Driscoll regarding whether Nelson's injury amounted to serious bodily injury. Second, Piel contends the trial court should have instructed the jury that a deadly weapon is defined by "the manner in which it is used or intended to be used in a particular incident," rather than the statutory definition of a deadly weapon that contains a more general use clause. *See* § 18-1-901(3)(e)(II).

¶ 9    We address each contention in turn.

### A.    Cross-Examination of Officer Driscoll

¶ 10    We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Meils*, 2019 COA 180, ¶ 11. A trial court

4

abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension or misapplication of the law. *Id.*

¶ 11 During counsel's cross-examination of Officer Driscoll, the following exchange occurred:

> Q: And as the officer at the hospital, one of your duties was to investigate whether there was serious bodily injury?
>
> A: Correct.
>
> Q: And in investigating that, you were referencing the legal definition in Colorado of serious bodily injury, correct?
>
> A: Correct. And as . . . to what the doctors see and observed . . . and would testify to, yes.
>
> Q: Right. So what the doctors thought about whether it met that legal definition for serious bodily injury, right?
>
> A: Correct.
>
> Q: Okay. An injury counts as serious bodily injury if it involves a substantial risk of death, a substantial risk of serious permanent disfigurement?

¶ 12 At that point, the prosecutor objected to defense counsel's asking Driscoll either questions pertaining to whether Nelson's wound was a serious bodily injury or questions that required

Driscoll to opine on or apply the legal definition of serious bodily injury because that would call for Driscoll to give a legal conclusion. In response, Piel's counsel noted that Piel was charged with assault with a deadly weapon, and whether serious bodily injury occurred was "relevant to many issues." On appeal, Piel clarifies this argument thusly: To qualify as a "deadly weapon," a weapon must be "capable of producing death or serious bodily injury" in the way the defendant used it. § 18-1-901(3)(e)(II). Therefore, to demonstrate that the prosecution could not meet its burden in proving the knife was a deadly weapon, Piel sought to show that Nelson's wound was not a serious bodily injury through Driscoll's testimony of what he saw and was told, or not told, by treating medical staff at the hospital.

¶ 13    At the end of the bench conference, the following exchange occurred:

> COURT:  I'm not going to allow [Driscoll] to give an answer about whether or not [the] legal definition [of serious bodily injury] has been met.

> DEFENSE COUNSEL:  Then I would just ask [Driscoll] whether he obtained any evidence that there was serious bodily injury in the course of his investigation.

PROSECUTION: And Your Honor, I would continue to object.

COURT: I'm going to sustain the objection if you're using that [phrase], and particularly how you've started to ask it. Again, using it and calling it a legal definition. You can ask [Driscoll] questions about whether [Nelson] had to be admitted to the hospital . . . and what type of treatment [he received] . . . .

¶ 14    Piel's argument requires us to consider two aspects of the trial court's ruling: whether the trial court erred by precluding questions about whether Nelson's wound met the legal definition of serious bodily injury, and whether any inquiry about serious bodily injury was irrelevant because Piel was not charged with inflicting serious bodily injury. We address both in turn.

¶ 15    A lay witness cannot testify as to "whether a particular legal standard has or has not been met." *People v. Acosta*, 2014 COA 82, ¶ 32. Therefore, a "question that elicits . . . opinion testimony must be phrased to ask for a factual, rather than a legal opinion." *Id.* (quoting *People v. Beilke*, 232 P.3d 146, 152 (Colo. App. 2009)). The question posed by Piel's counsel clearly sought to elicit Driscoll's opinion on whether the legal definition of serious bodily injury was established in this case because counsel quoted the definition of

7

that term in his question.  For this reason, we perceive no abuse of discretion in the trial court's decision to prohibit the questions that sought Driscoll's opinion on whether or not Nelson's injury met the legal definition of serious bodily injury.

¶ 16    We now turn to Piel's argument that the trial court abused its discretion in determining that any question about serious bodily injury was irrelevant.  Piel argues that determining whether Nelson's wound was a serious bodily injury ties directly to whether the knife was a deadly weapon.

¶ 17    When assessing whether an object is a deadly weapon, we "evaluat[e] the manner in which the object[] [was] used." *People v. Saleh*, 45 P.3d 1272, 1274 (Colo. 2002); *see People v. Buell*, 2017 COA 148, ¶ 33 ("[D]etermining whether a knife is a deadly weapon involves a two-step inquiry: (1) did the defendant intend to use the knife as a weapon; and if so, (2) was the knife capable of producing serious bodily injury?"), *aff'd*, 2019 CO 27.  Piel specifically argues that we should decline to follow *Buell*, which held that "a reasonable jury could not have concluded that [a four- to five-inch] knife was anything other than a deadly weapon." *Buell*, ¶ 36.  Instead, he argues that the extent of Nelson's injuries — and particularly the

8

absence of a serious bodily injury finding — suggests that the steak knife was not used as a deadly weapon.

¶ 18     However, Piel's logic is flawed: While the presence of a serious bodily injury could indicate that a deadly weapon was used, it does not necessarily follow that the lack of serious bodily injury indicates that a deadly weapon was *not* used. *See id.* at ¶ 35 ("[W]hether an object is a deadly weapon does not depend upon the ultimate result of an object's use." (quoting *Saleh*, 45 P.3d at 1275)). So we need not decide whether a knife of this size is always a deadly weapon because Piel's intent in using the knife coupled with the size of the blade made it clear that the knife was capable of producing serious bodily injury. Therefore, we perceive no error in the trial court's determination that the presence or absence of serious bodily injury was irrelevant.

### B.     Deadly Weapon Jury Instruction

#### 1.     Standard of Review

¶ 19     "A trial court must accurately instruct the jury concerning the controlling law." *People v. Melara*, 2025 COA 48, ¶ 16. "We review jury instructions de novo to determine whether they accurately

9

inform the jury of the governing law." *McDonald v. People*, 2021 CO 64, ¶ 54 (quoting *Hoggard v. People*, 2020 CO 54, ¶ 12).

¶ 20    "Jury instructions framed in the language of a statute are generally considered adequate and proper." *People v. Manyik*, 2016 COA 42, ¶ 77. Some model jury instructions, however, require specific tailoring to each case when the instructions, taken as a whole, do not adequately apprise the jury of the law from the defendant's standpoint — for example, self-defense. *See Idrogo v. People*, 818 P.2d 752, 754 (Colo. 1991). We review a trial court's "decision whether to give a particular jury instruction for an abuse of discretion." *Melara*, ¶ 16.

### 2.    Analysis

¶ 21    Piel argues that the trial court should have instructed the jury that a deadly weapon is defined by "the manner in which it is used or intended to be used *in a particular incident*." Piel argues that the exclusion of his requested "in a particular incident" language could have confused the jury. Specifically, he contends that the jury may have interpreted the statutory phrase to refer to the "use or intended use" of a steak knife in a general sense, rather than to Piel's use or intended use of the knife.

10

¶ 22    Piel's argument relies on the proposition that both the prosecution and a division of this court in *People v. Montez*, 280 P.3d 9 (Colo. App. 2010), *rev'd*, 2012 CO 6, concluded that the definition of deadly weapon could be interpreted to apply to more instances than just the charged conduct.  Therefore, his argument continues, if both the People and a division of this court could interpret the definition so broadly, a reasonable juror could do the same.  However, Piel's argument fails for multiple reasons.

¶ 23    First, the division in *Montez* did not expressly address or conclude that the definition of a deadly weapon could be interpreted to apply to the manufacturer's intended use of a weapon, as opposed to the defendant's intended use; rather, the division held there was sufficient evidence to support the conclusion that the defendant was armed with a deadly weapon.  *Montez*, 280 P.3d at 12-13.  True, the supreme court reversed the defendant's conviction because the prosecution had argued to the jury that the definition of deadly weapon could be satisfied if the weapon was used as intended by the manufacturer rather than the defendant.  *Montez*, ¶ 3 ("We hold that the term 'intended to be used' in the deadly weapon definition of section 18–1–901(3)(e) refers to the

11

defendant's, not the manufacturer's intent."). But this was an issue that the division had not expressly addressed.

¶ 24    In addition to these legal distinctions, *Montez* is clearly distinguishable factually. Piel's crime did not involve a gun. Rather, it was committed with a steak knife. The manufacturer's intended use of a steak knife is to cut food. Thus, even if we assume that the instruction could create ambiguity in some contexts, we perceive no likelihood that the jury would have been misled into thinking that it should focus on the manufacturer's intended use of the steak knife rather than Piel's intended use when stabbing Nelson.

¶ 25    Moreover, the instructions must be read as a whole, rather than in isolation. *Riley v. People*, 266 P.3d 1089, 1092-93 (Colo. 2011) ("We consider all of the instructions given by the trial court together to determine whether they properly informed the jury."). Read together, and in context, it is clear that the jury was instructed to focus on Piel's conduct and intent, on the night in question, when he stabbed Nelson. We perceive no reasonable basis by which the jury could have been misled into thinking that it

12

should analyze the use or intended use of the steak knife from anyone's perspective other than Piel's.

¶ 26     Finally, the jury instruction provided by the court was consistent with both the model jury instruction and the relevant statute. *See* COLJI-Crim. F:88 (2024); § 18-1-901(3)(e)(II). And there is nothing in the record to indicate that the jury was confused by the instructions or sought clarification. Thus, we perceive no error.

## C.     Cumulative Error

¶ 27     "[C]umulative error is based on the concept that multiple errors, in isolation, may be viewed as harmless, but the synergistic effect of the multiple errors may be greater than [their] sum" and are therefore "so prejudicial that they deprive a defendant of a fair trial." *People v. Grudznske*, 2023 COA 36, ¶ 80. Because we perceive no error with either of the trial court's determinations raised on appeal, we do not find any cumulative error. *See id.* at ¶ 81.

## III.     Disposition

¶ 28     The judgment is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.

13