22CA1580 Peo v Morgan 10-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1580
Weld County District Court No. 20CR496
Honorable Timothy Kerns, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kaman Michael Morgan,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Casey J. Mulligan, Alternate Defense Counsel, Boulder, Colorado, for
Defendant-Appellant

¶ 1 Defendant, Kaman Michael Morgan, appeals his conviction for first degree murder. We affirm.

## I. Background

¶ 2 Morgan and B.B. dated on and off for three years and had a child together.

¶ 3 On February 24, 2020, police responded to a report of a shooting at Morgan's house. Upon arrival, they found B.B. lying face down in the driveway, with blood coming from her head. The windshield of B.B.'s car had five bullet holes. B.B. had been shot six times — five times from the front or side, and once in the back of the head.

¶ 4 Multiple neighbors testified that they heard gunshots on the night of the shooting. One neighbor testified that when she went outside, she heard a man yell, "That's what you get, you bitch."

¶ 5 After the shooting, Morgan called his mother and confessed to shooting B.B. A few hours later, he arrived at his mother's house and asked her to drive him to the police station. Morgan told his mother that B.B. "said the wrong thing one last time," so he retrieved his gun from the house and shot B.B. through the front windshield of her car.

¶ 6     Earlier on the day of the shooting, Morgan and B.B. exchanged text messages about B.B. picking up their infant son from Morgan's house.  Morgan wrote, "I'm just so done with your fucking shit[,] it gives me a headache even talking to you.  Actions speak louder than words! When you come my dad will [hand] him off to you[,] I don't even want to see you ever again.  Or speak to you if I don't have to."  Morgan then called B.B. a "cunt."

¶ 7     The trial evidence further showed that Morgan had threatened to kill B.B. during a phone call in January 2020 and again the day before the shooting.

¶ 8     Morgan testified at trial.  Morgan admitted that he had repeatedly threatened to kill B.B., though he claimed that they were empty threats.  Morgan said that B.B. arrived at his house around 8 p.m. to pick up their son.  He said they argued and B.B. hit him in the leg with the car seat.  She then said, "Say good-bye to your son.  You're never [going to] see him again[,] . . . at least alive."  Morgan testified that he went inside to get his cell phone to call the police and, while inside, also grabbed his gun.  He returned outside and claimed he saw B.B. shaking their son while putting him in the car seat.  Morgan then shot B.B. five times through the car's

windshield. When she fell out of the car, Morgan said he accidentally shot her a sixth time.

¶ 9     Police recovered a .357 magnum revolver from the front lawn. All six bullets had been fired. They also recovered a box of .357 magnum ammunition that was missing six bullets.

¶ 10     The jury convicted Morgan of first degree murder (after deliberation) as an act of domestic violence, and the trial court sentenced him to life without parole.

¶ 11     On appeal, Morgan contends that the trial court (1) impermissibly permitted prosecutorial misconduct during voir dire; (2) erroneously refused to give the jury a curative instruction defense counsel requested after deliberations had begun; and (3) erroneously precluded the defense from eliciting exculpatory testimony from Morgan's brother. He also asserts these errors cumulatively deprived him of a fair trial. We address and reject each of his contentions.

II.     Prosecutorial Misconduct and Curative Instruction

¶ 12     Morgan contends that the prosecutor committed misconduct when he used an analogy to explain the concept of "after deliberation." He further contends that the trial court erred when it

denied his request for a curative instruction on "after deliberation" after the jury began deliberating. We discern no error.

### A. Additional Background Information

¶ 13    During voir dire, the prosecutor questioned the panel about inferring intent from an individual's action. He used the example of someone using their turn signal, indicating their intent to turn. He then asked two jurors about using their turn signals.

> [PROSECUTOR]: On your way to court, did you change lanes?
>
> JUROR NO. 10: Yes.
>
> [PROSECUTOR]: And can you describe for me how you did it? And he's not going to write you a ticket if you —did you use your turn signal?
>
> JUROR NO. 10: No, I just used my turn signal and used my mirrors to make sure I can get over.
>
> [PROSECUTOR]: Okay. How long did that take you?
>
> JUROR NO. 10: A few seconds, I guess.
>
> [PROSECUTOR]: Would you say it was a hasty decision you made?
>
> JUROR NO. 10: No.
>
> [PROSECUTOR]: Okay. Was it — or it wasn't impulsive either, was it?

JUROR NO. 10: No.

[PROSECUTOR]: Okay. It's something you thought about and did relatively quickly?

JUROR NO. 10: Yes.

[PROSECUTOR]: And you did it safely?

JUROR NO. 10: Yes.

. . . .

[PROSECUTOR]: Juror Number 9, same question.

JUROR NO. 9: Yeah, I just turn my turn signal on and change lanes, and made it on time.

[PROSECUTOR]: Okay. And, again, it wasn't an impulsive decision —

JUROR NO. 9: No.

[PROSEUCTOR]: -- or hasty; is that fair?

JUROR NO. 9: Right.

[PROSECUTOR]: And it was a relatively quick decision?

JUROR NO. 9: Yes.

¶ 14    In closing argument, the prosecutor referenced this analogy without objection, saying the following regarding the element of after deliberation:

> After deliberation, you guys heard a lot of talk about that when we were doing jury selection

and things like that. The judge talked to you about it, I talked to you about it, defense counsel talked to you about it. But this definition doesn't mean you have to think for days and days and weeks and weeks about a plan, you know, like, in a movie plot or something like that. That's why I talked to you guys in jury selection about changing lanes in a car. It's something that if you don't do safely, it can have huge ramifications. But you do it quickly. You look in your mirror, you signal and you go or don't go because it's not safe yet. It can be a very quick decision.

We talked about it can't be hasty or impulsive, right? Just like changing a lane. Here, you have him telling her the day before he's going to kill her. Him telling her to come to their house and get [their child] that night right then and there . . . . He's not happy about her moving in with her new boyfriend. His mom tells her —tells you guys, or at least the cops do, that he's been saying he wanted to kill her for weeks. . . . [He] threatens to murder her the day before. The day of the murder he tells her how much [he] hates her and doesn't want her moving in with [her boyfriend]. That shows deliberation, ladies and gentlemen. That shows that this was intentional.

¶ 15    Defense counsel then responded:

So first, let's look at the element of after deliberation. After deliberation has a specific definition.

. . . .

In jury selection, and then even in close, the prosecution asked you about changing lanes.

How many people changed lanes when they're driving to court today? Using their turn signal when you've changed lanes. Changing lanes? How many times have you changed lanes in your life? It's an automatic look, signal, move. Where do you have to sit there thinking about how do I change lanes? Where is my turn signal? Am I supposed to look or just move? No. Changing lanes is so ingrained that it's a habit.

That is not after deliberation. And [Morgan] did not shoot [B.B.] after deliberation. [Morgan] shot [B.B.] to stop the threat to his son. He quickly reacted.

¶ 16     In rebuttal closing, the prosecutor responded:

We talked about the turn signal in jury selection, about making decisions, and how you can make decisions in a moment. Not hastily, but you can make decisions in a moment. Just like turning your turn signal on like we do every day. Think about that and [Morgan's] actions. He deliberately got his gun. He deliberately pulled the trigger six different times. Hitting her all six times. He could think between each time he pulled that trigger, and he did it all six times.

¶ 17     The jury received the following definition of "after deliberation":

The term "after deliberation" means not only intentionally, but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act after deliberation is never one which has been committed in a hasty or impulsive manner.

7

¶ 18    The trial court also instructed the jury:

> It is my job to decide what rules of law apply to
> the case.  While attorneys may comment on
> some of these rules, you must follow the
> instructions I give you.  Even if you disagree
> with or do not understand the reasons for
> some of the rules of law, you must follow them.
> No single instruction describes all the law
> which must be applied; the instructions must
> be considered together as a whole.

¶ 19    After deliberations began, defense counsel lodged a late

objection to the prosecutor's argument, saying the following:

> Just looking at . . . the closing arguments in
> [*People v. McBride*, 228 P.3d 216 (Colo. App.
> 2009)] that reference back to voir dire, in
> *McBride* this was the running a yellow light.
> And I — I do realize that there is kind of a
> difference of the facts in *McBride* and the facts
> here . . . .
>
> One of the issues was the prosecution in
> *McBride* kept saying that it only takes a
> second, that that decision only takes a second.
> And they're equating yellow light with after
> deliberation.  I think that the circumstances in
> this case are very similar to what happened in
> *McBride*, so I think it's really important that we
> do address this.
>
> Just like in *McBride* where the [c]ourt found
> that driving though a yellow light[,] it stated
> it's not illegal or even necessarily negligent, so
> the analogy was in[a]pt.
>
> [The court went] on to state that typically
> driving through a yellow light is . . . an

8

inconsequential decision made hastily or impulsively rather than after true deliberation. I think that the scenario of — that was brought up in voir dire and then in closing and I think — and definitely rebuttal as well, the changing lanes and equating changing lanes, even if hitting your turn signal only takes, like, a quick action, it's still, like, after deliberation. I believe that's what they were equating it to, which I think would be improper.

¶ 20    Defense counsel then requested a curative instruction.

¶ 21    The trial court found as follows:

So the first question for the [c]ourt is whether the analogy that was used in this case is tantamount to the analogy used in the yellow light scenario referenced in *McBride*. I think there's some distinguishing facts that need to be acknowledged in terms of conducting that analysis.

Number one, there was a discussion about looking to see if there's another car turning the signal on and then moving the vehicle, so that is more than a second or some sort of reflective action by someone.

The reference in the rebuttal is, perhaps, more problematic. Reality is that that reference — let me find it here. . . . I like to make a decision in a moment, not hastily, but you ca[n] make them like turning on you[r] signal. And then the following is a lengthy description of the actions leading up to the — or advancing the People's argument about the step by step; getting the gun, pulling the trigger six times, hitting her all six times, he could think

9

between each time he pulled the trigger, he did it all six times, deliberately moved her car down the street.  That whole argument.  So the — the totality of the argument is that there is considerable reflective — or thought process that went into [Morgan's] conduct.

And the People referenced twice that we're not talking about hasty or they — I don't know if they used impulsive, as well, but I think so.  They indicated that it is not hasty or impulsive conduct, which is consistent with legal principles.

So the — the context of the analogy — it's probably not wonderful, frankly, but I don't think it's fatal in this case.  I think that [it's] distinguished from the yellow light scenario.  And I think we just all understand that the yellow light scenario, you have to decide right now, am I pressing the gas or am I pressing the [pedal]?  And that happens in a second, in a moment you have to make that decision.

The analogy used with respect to the turn signal was not that — in fact, I think the opposite was said at one point.  Something along the lines of you have to look in the other lane, and then use the turn signal.  So the — the idea of — and so I don't — I — I didn't have a contemporaneous objection and I'm not fall — faulting anybody for that.  You know, the [c]ourt, I guess, is presumed to know all the law as well.  I try to highlight some of the things before closing so we didn't get into trouble looking at some more recent issues.

I'm just not confident it's — it's the same analogy.

¶ 22　Defense counsel then argued that while the analogy differed slightly from the one in *McBride*, it was close, and a curative instruction was necessary. The trial court disagreed, stating that the prosecutor's analogy did not convey to the jury that Morgan's actions were decided in a second but instead described the multiple steps that he took. Further, the court found that the prosecutor emphasized that "after deliberation" cannot be hasty or impulsive.

¶ 23　Ultimately, the trial court denied the request for the supplemental instruction, stating as follows:

> Yeah, the problem I have is that if pressed on it, which, obviously, I am, I can't find that — that [the analogy] warrants readvising the jury. And even if I elected to do that, then I do think that I have to go through the exercise of making a decision. Do I provide an instruction? Do I provide an interrogatory? Do I — do I have to get commitments from them to commence deliberations again?
>
> And if that was the right call, perhaps, that's what I would do. But I think the totality of the record before me does not convey the message that this could happen in a second. The totality of the record, in my mind, says that this was . . . well planned — and that's — that's been the argument is that this was a planned event. And it's evidenced by him going down to the bedroom, pulling the gun out, walking up the stairs, all the things that were highlighted.

So I don't think — I don't think the right decision is to provide an instruction to the jury.

### B. Standard of Review and Applicable Law

¶ 24 Whether a prosecutor's statement constitutes misconduct is left to the trial court's discretion. *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). We will not disturb the court's rulings regarding such statements absent a showing of an abuse of that discretion. *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010). A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair, or it misapplies the law. *People v. Ambrose*, 2021 COA 62, ¶ 53.

¶ 25 We conduct a two-step analysis when reviewing a claim of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor's challenged conduct was improper under the totality of the circumstances. *Id.* Second, if the prosecutor's comments were improper, we evaluate whether they warrant reversal according to the proper standard of reversal. *See id.*

¶ 26 A prosecutor, while free to strike hard blows, is not at liberty to strike foul ones. *Id.* Thus, a prosecutor may not misstate or

12

misinterpret the law. *People v. Grant*, 174 P.3d 798, 810-11 (Colo. App. 2007). Moreover, "[u]sing an analogy to explain the concept of deliberation can be problematic, especially where it might trivialize the reflection and judgment necessary to commit first degree murder." *People v. Dominguez-Castor*, 2020 COA 1, ¶ 88.

¶ 27 "We evaluate claims of improper argument 'in the context of the argument as a whole and in light of the evidence before the jury.'" *People v. Van Meter*, 2018 COA 13, ¶ 24 (quoting *People v. Geisendorfer*, 991 P.2d 308, 312 (Colo. App. 1999)). Because arguments at trial are seldom perfectly scripted, we give prosecutors the benefit of the doubt when their remarks are ambiguous or inartful. *People v. McMinn*, 2013 COA 94, ¶ 60.

¶ 28 Trial courts are required to properly instruct the jury on all matters of law. *Key v. People*, 715 P.2d 319, 323 (Colo. 1986). Generally, a curative instruction will remedy any prejudice caused by improper comments or argument. *See People v. Meils*, 2019 COA 180, ¶ 24. We review a trial court's decision to give a supplemental jury instruction for an abuse of discretion. *People v. Griffin*, 224 P.3d 292, 298 (Colo. App. 2009). A trial court abuses its discretion

13

when its ruling is manifestly arbitrary, unreasonable, or unfair, or it misapplies the law. *People v. Abdulla*, 2020 COA 109M, ¶ 61.

¶ 29     A person commits murder in the first degree if, after deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person. § 18-3-102(1)(a), C.R.S. 2025. As stated previously, "[t]he term 'after deliberation' means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act." § 18-3-101(3). "An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." *Id.*

¶ 30     When a defendant fails to object at trial, we review for plain error. *Van Meter*, ¶ 26. "Reversal is required under this standard only if the error was obvious and 'so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.'" *Id.* (quoting *Hagos v. People*, 2012 CO 63, ¶ 14).

## C.     Prosecutorial Misconduct

¶ 31     While we generally discourage the use of analogies to explain legal concepts, we discern no reversible misconduct in the

14

prosecutor's remarks. Like the trial court, we are not persuaded that *McBride* requires a different result. *See McBride*, 228 P.3d at 221-26.

¶ 32    In *McBride*, the prosecutor referenced a yellow-light analogy during voir dire and, in rebuttal closing, argued, "How long does it take [to decide to go through a yellow light]? A second. That fast. [The defendant] exercised reflection and judgment." *Id.* at 224-25. The division held that the prosecutor's "analogy was inapt" because driving "through a yellow light is not illegal or even necessarily negligent and typically is an inconsequential decision made hastily or impulsively rather than after true 'deliberation.'" *Id.* at 225 (citations omitted). And it noted that not "every possible permutation of a yellow-light argument" is plain error. *Id.* However, the division explained that "[w]hat made this argument plainly wrong was the prosecutor's insistence that yellow-light deliberation could occur as 'fast' as '[a] second.'" *Id.*

¶ 33    Here, in contrast, while the prosecutor stated that the decision to change lanes could be "very quick," he never attributed a specific time frame to the decision. Instead, he used the jurors' step-by-step decision process to emphasize that the decision was

neither hasty nor impulsive. He then connected the analogy to the trial evidence supporting the after deliberation element, including Morgan repeatedly threatening B.B., going inside the house to retrieve the gun, and shooting B.B. six times, including once in the back after B.B. fell out of the car. Therefore, we conclude that while perhaps inartful, the prosecutor's lane-change analogy does not constitute misconduct.

¶ 34    But even if such comments were improper, they did not amount to plain error for three reasons. First, the trial court provided the jury with the correct definition of "after deliberation" and instructed the jury that while the attorneys could argue the instructions, it was the court's job to decide what rules of law applied. Absent contrary evidence, we presume the jury understood and followed these instructions. *Bondsteel v. People*, 2019 CO 26, ¶ 62.

¶ 35    Second, defense counsel did not object contemporaneously. The lack of an objection "may demonstrate [a] belief that the live argument, despite its appearance in a cold record, was not overly damaging." *People v. Knapp*, 2020 COA 107, ¶ 61 (quoting *Domingo-Gomez*, 125 P.3d at 1054).

¶ 36     Third, the evidence against Morgan was overwhelming. Morgan admitted to repeatedly threatening to kill B.B., going into the house after their argument, retrieving his gun, and shooting B.B. six times.  These admissions were further corroborated by physical evidence.

¶ 37     Accordingly, we discern no reversible error.

### D.     Curative Instruction

¶ 38     Similarly, we discern no abuse of discretion in the court's refusal to provide a curative instruction, for two reasons.  First, the record shows, and Morgan does not dispute, that the court correctly instructed the jury on the meaning of "after deliberation." Moreover, the jury never asked a question about the meaning of this term.  Thus, we presume the jury understood and followed this definition.  *Bondsteel*, ¶ 62; *cf. Leonardo v. People*, 728 P.2d 1252, 1256 (Colo. 1986) (appropriate to give a supplemental instruction when jury expresses confusion about an issue in the instructions).

¶ 39     Second, the record shows that the trial court thoroughly considered the *McBride* case and determined that a curative instruction was unnecessary.  For the reasons described above, we agree and conclude this decision was reasonable.  *See People v.*

*Palacios*, 2018 COA 6M, ¶ 18 (when assessing for abuse of discretion, "we look to whether the trial court's decision fell within a range of reasonable options").

¶ 40     Accordingly, we discern no abuse of discretion in the trial court's denial of Morgan's curative instruction.

## III.   Self-Serving Hearsay

¶ 41     Morgan next contends that the trial court erred by excluding his brother Konner[1] Morgan's testimony under the self-serving hearsay rationale.  While we agree that the court erroneously excluded the statement as self-serving hearsay, we affirm its ruling on alternate grounds, concluding that the court properly excluded the statement because it was irrelevant under CRE 401 and 402. *See People v. Dyer*, 2019 COA 161, ¶ 39 (we may affirm a lower court's decision on any grounds supported by the record, regardless of whether it was relied upon or considered by the lower court).

---

[1] Konner shares the same last name as the defendant.  Accordingly, we refer to him by his first name.  We mean no disrespect in doing so.

18

## A. Additional Facts

¶ 42 Konner testified that Morgan was living at his house at the time of the shooting. Defense counsel asked, "[F]or the time . . . that you [were] living with [Morgan], . . . [Morgan] never said anything to you about planning to kill [B.B.], right?" The prosecution objected on hearsay grounds. Defense counsel argued that he was not trying to elicit hearsay because he knew the answer to the question was no.

¶ 43 The trial court sustained the objection, finding as follows:

> Here's the foundation of that argument: If you wish to elicit [w]hat the two of them had communication about without getting into any substance, you can say, Did you have a conversation about X or Y? Yes.
>
> Any inference about the substance of that becoming the truth of the matter asserted, then, is a hearsay question that calls for a hearsay response. Now, I understand the argument is [Morgan] did not make a statement and, therefore, there's no hearsay involved.
>
> The question's improper because it calls for the truth of the matter asserted to be inferred by the absence of a response. And so that is self-serving and it's improper. So I'll — I'll flip the scale a bit. If you believe there's case law that says that someone can go on the stand and you can ask them all of the omissions that

19

they have made in terms of their statements, then I'll have to reconsider. But I've had this happen before. I'm fairly confident — I am confident that this is improper, because the question itself calls for a substantive response.

¶ 44 The prosecutor then clarified:

I think this situation is distinct where Defense is attempting to elicit a statement or opening a door, but if Defense phrases a question as, you know, [y]ou never heard someone say this? You never heard this from this person? Obviously, if the answer from the witness is yes, that's different. But the answer is no here.

¶ 45 The trial court responded:

Let me frame it a little bit to make sure that we're clear, because if we have a context of either the declarant being subject to cross-examination or a statement that's already in evidence, and then to clarify it by saying, you did not say X or Y, I understand that argument.

In this case we have [Morgan], who has not taken the stand yet, and it is a . . . statement that advances his state of mind without being subject to cross-examination. So I think it's different than a context where you have a declarant who's already been subject to cross-examination and you're clarifying what they did not say. So that's the distinction I'm making to start with.

. . . .

[T]he import of this question is it's conveying [Morgan's] thought processes through a question of omission without any context. And in that scenario, that is an improper question. I don't have any other context within which to decide whether it's rebutting something from the People or not that may or may not come up that I'm aware.

## B. Standard of Review and Applicable Law

¶ 46 We review the trial court's evidentiary rulings for an abuse of discretion under the standards set forth previously. *See People v. Gonzales-Quevedo*, 203 P.3d 609, 612 (Colo. App. 2008).

¶ 47 Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Unless it falls within an exception under the Colorado Rules of Evidence or is permitted by statute or procedural rules, hearsay is inadmissible. CRE 802.

¶ 48 "Colorado law has no per se rule excluding a defendant's self-serving hearsay statement." *People v. Vanderpauye*, 2023 CO 42, ¶ 28. Rather, "a defendant's self-serving hearsay statement may be admissible if it satisfies a hearsay-rule exception in the Colorado Rules of Evidence." *Id.*

21

¶ 49   Only relevant evidence is admissible. CRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Evidence is probative if it has "a tendency to prove the proposition for which it is offered." *Fletcher v. People,* 179 P.3d 969, 974 (Colo. 2007).

## C.   Analysis

¶ 50   To the extent that the trial court relied on the self-serving nature of the statement to exclude it, the trial court erred. However, the record shows that the court did not solely rely on the self-serving rationale. It also addressed the statement's relevance. The court noted that defense counsel's question sought to convey Morgan's thought process through an omission, but without any meaningful context. We agree. The fact that Morgan did not tell Konner that he planned to kill B.B. does not have any tendency to make the existence of any fact that was of consequence to the determination of the action more or less probable. *See* CRE 401. While Konner testified that he knew Morgan and B.B. had a contentious relationship in general, no evidence was presented that

Morgan spoke to Konner about B.B. leading up to the shooting. On the contrary, Konner testified that he spent little time at the home with Morgan and instead lived primarily at his girlfriend's house. Without additional context, the fact that Morgan did not tell Konner about a plan carries no probative value and is therefore irrelevant.

¶ 51 Accordingly, we discern no abuse of discretion in the court's decision not to admit this evidence.

## IV. Cumulative Error

¶ 52 When reviewing for cumulative error, we ask whether "numerous formal irregularities, each of which in itself might be deemed harmless, may in the aggregate show the absence of a fair trial." *Howard-Walker v. People*, 2019 CO 69, ¶ 18 (quoting *Oaks v. People*, 371 P.2d 443, 446 (Colo. 1962)). Because we have identified no errors, we necessarily find no cumulative error.

## V. Disposition

¶ 53 The judgment is affirmed.

JUDGE PAWAR and JUDGE YUN concur.